214 N.J. Super. 12 (1986)
518 A.2d 234
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 1986.
Decided November 19, 1986.
*13 Before Judges ANTELL, LONG and D'ANNUNZIO.
Alfred A. Slocum, Public Defender, attorney for appellant (Sheila Mylan, Designated Counsel, of counsel and on the brief).
Samuel Asbell, Camden County Prosecutor, attorney for respondent (David E. Schafer, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by LONG, J.A.D.
After a jury trial, defendant John Williams was found guilty of attempting to cause serious bodily injury to Carolyn Brown by stabbing her (N.J.S.A. 2C:12-1(b)(1)); attempting to cause *14 serious bodily injury to her with a deadly weapon, a knife (N.J.S.A. 2C:12-1(b)(2)); possession of a weapon under circumstances not manifestly appropriate for such uses as it may have (N.J.S.A. 2C:39-5(d)); possession of a weapon with intent to use it unlawfully against another (N.J.S.A. 2C:39-4), and attempted murder (N.J.S.A. 2C:5-1 and 2C:11-3). After merging the other four counts, the trial judge sentenced defendant on the attempted murder conviction to a custodial term of ten years with a five year parole disqualifier. He also imposed a $500 Violent Crimes Compensation Board penalty.
This appeal ensued in which defendant claims that the following trial errors warrant reversal:
POINT I  The trial court erred in denying defendant's motion under Evid. R. 55 to admit exculpatory evidence of other crimes.
POINT II  The conviction should be reversed because the testimony of Grace Banks and Michelle Burgess and the patent inferences to be drawn there from, was in violation of Evid. R. 47 and deprived defendant of a fair trial (Not Raised Below).
POINT III  No evidence was introduced by the State which would make out a prima facie case against the defendant and the motion for acquittal should have been granted.
POINT IV  It was reversible error for the court to have admitted into evidence the victim's pocketbook (Not Raised Below).
POINT V  The appellate division should reverse the conviction below as being against the weight of the evidence (Not Raised Below).
POINT VI  Because of the ineffective assistance of counsel in failing to provide the State with timely discovery defendant's conviction should be reversed.
POINT VII  The conviction below should be reversed because the trial judge did not restrict the testimony of Grace Banks and Michelle Burgess to its proper scope and restrict the jury in accordance with Evid.R. 6. (Not Raised Below).
POINT VIII  Notwithstanding the failure of defense counsel to provide the State with discovery, the court abused its discretion in failing to allow Janet Wintner to testify for the defense. (Not Raised Below).
POINT IX  The trial court committed reversible error by failing to conduct a hearing regarding the admissibility of the testimony of Grace Banks and Michelle Burgess under Evid. R. 4. (Not Raised Below).
POINT X  The trial court committed reversible error by failing to conduct a hearing regarding the admissibility of the testimony of Grace Banks and Michelle Burgess under Evid. R. 8. (Not Raised Below).

*15 POINT XI  Because of the ineffective assistance of counsel in failing to recall Patrolman Sunkett as a witness, the conviction below should be reversed. (Not Raised Below).
POINT XII  Because of the ineffective assistance of counsel in failing to request a hearing as to the invalidity of the warrant to arrest defendant, the conviction below should be reversed. (Not Raised Below).
POINT XIII  The trial court erred in not permitting defense counsel to cross-examine Patrolman Gary Sunkett as to his incident report.
POINT XIV  Because of the ineffective assistance of counsel in failing to call Leonard Barrette as a witness at trial, the conviction below should be reversed.
We agree with defendant that the refusal of the trial judge to allow him to adduce "other crimes" evidence for defensive purposes pursuant to Evid. R. 55 was error. We also view as erroneous the judge's exclusion of the testimony of Janet Wintner which would have drawn into serious question the victim's identification of defendant. Together these errors eviscerated the defense entirely and denied defendant a fair trial. Thus, we reverse.
The case arose out of the stabbing of Carolyn Brown on May 2, 1982. Brown had been dating defendant for approximately two years. When she told him that she wanted to date others the relationship deteriorated. Defendant began to pursue Brown, threatening her and physically abusing her, resulting in her filing a criminal complaint against him. At about 3:00 a.m. on the morning in question Brown was walking to her home in Camden after an evening of drinking in local bars. While on 8th Street she saw a man run across the street ahead of her and dart into an alley. As she passed the alley she glanced into it and briefly saw the man's face, which was illuminated by a street light at the corner. The man then jumped out at her as she passed and grabbed her around the neck. He told her "not to holler," but she tried to break loose and began screaming. The two struggled and the man stabbed her at least nine times. Brown eventually broke free and ran to a nearby house for help where she collapsed from her wounds. The man fled.
Officer Sunkett of the Camden police was about a block from the scene when he received a radio dispatch directing him there. He was the first to arrive after the incident and, noting that *16 Brown was bleeding, asked her what had happened. She responded, "[s]omebody cut me." She told Sunkett that she did not know who her attacker was. Sunkett then called for an ambulance. In his police report Sunkett stated that Brown had said the attacker was "pulling on her clothes"; he noted the attack as a possible rape attempt.
Several days after the incident, Detective Pickup of the Camden police interviewed Brown in the intensive care unit. She told him she could not identify her attacker. Based on information supplied by Brown's sister, Pickup then inquired if she had been stabbed by defendant. He noticed that "[t]here appeared to be a fear, a very upsetting look in her face when I mentioned his name. Her eyes got brighter and wider and she said, you know, shook her head no." He returned later that day to question her again and was approached by a woman who identified herself as Brown's cousin. This woman told Pickup that she had just spoken to Brown who had revealed the identity of her attacker and was willing to tell the police. Pickup then went to Brown's room where she told him that she had been stabbed by defendant. Pickup told Brown that they had defendant in custody and that he denied that he had attacked her to which she replied, "`well, ask him about his fishing knife, ask John where his fishing knife is.'" Pickup had previously been told by Brown's family that they believed Brown had been stabbed by defendant. Based on this, he had arrested defendant on an outstanding warrant for a traffic violation.
During the course of his investigation, Pickup also interviewed a Mr. Barrette who had witnessed the attack which took place across the street from his home. Barrette, who testified at a hearing held pursuant to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1929, 18 L.Ed.2d 1149 (1967), said that while defendant looked like the attacker he was unable to positively identify him as Brown's assailant. He stated that he thought the assailant was 5'8" in height, approximately 165 lbs. and was punching Brown with his left hand. It is conceded that defendant *17 is 5'9" tall, 145 lbs. and right handed. Barrette did not testify at the trial.
Brown, who was the only witness to identify defendant, stated that she had no doubt that it was defendant who had stabbed her and that she had not told the police this at first because she was afraid of defendant. She later realized that defendant might kill her the next time and thus she decided to tell the police. When Brown was questioned in the hospital on May 27, 1982, concerning her identification of defendant she allegedly said to Janet Wintner, an investigator for the defense, "Well, who else could it be. It was him. I wasn't robbed or raped. Who else could it be?" This statement, memorialized in the investigator's report, was not admitted into evidence at trial because defense counsel failed to timely provide the prosecutor with a copy of the report during discovery. When questioned about the statement on cross-examination Brown neither admitted nor denied making it, stating that she did not remember what she had said. Brown also testified that she did not recall her attacker "pulling on her clothes."
At trial defendant sought to admit evidence of allegedly similar crimes committed in 1981 and 1982 by an individual named David Dixon who lived at the end of the alley in which the Brown attack occurred. The point of this proffer was to show that such evidence tended, alone or with other evidence, to negate defendant's guilt. Evid. R. 55. In the 1981 attack, the victim had made a phone call from a booth and noticed a man walk by the booth twice. He followed her, grabbed her from behind, dragged her into some bushes and raped her. He then threatened her with a knife. Dixon was charged for this attack but the victim did not testify at the grand jury hearing and the matter was no-billed. In the 1982 attack, which occurred while defendant was in jail, Dixon grabbed the victim on 8th Street, took her to the basement of his house where he raped her, and later dragged her down an alley and into some bushes and stabbed her eight times. Dixon pled guilty and was sentenced to ten years for this attack.
*18 In proffering the "other crimes" evidence, defendant underscored the similarities between the incidents: all of the attacks occurred within one block of Dixon's house in the early hours of the morning. In all of the incidents the victim was told not to scream and all were threatened with a knife. Significantly, Brown was stabbed nine times and the victim of the 1982 attack, eight times. Defendant is right handed and Dixon is left-handed. Barrette testified at the Wade hearing that he thought the attacker was left-handed. The Brown attack took place after the first Dixon attack but before the second.
The State admitted that in all three incidents the victim was grabbed from behind and threatened at the same time of day and in the same location as the crime at issue here but argued that the crimes were otherwise essentially dissimilar. It noted, for example, that in the Dixon cases the victims were accosted in the middle of the street rather than grabbed from behind by someone in an alley; that in one incident a knife was used after the rape, not before; that although Dixon threatened his victims, he did not say "Don't holler," and that in one case Dixon took the victim a substantial distance from his house before he stabbed her. Finally, the State urged that the major distinction was that both of the Dixon incidents were clear rapes. Brown, on the other hand, was not raped and testified at trial that her attacker did not attempt to rape her nor did she recall him pulling at her clothes.
In refusing to admit the Rule 55 evidence, the trial judge stated that it would unduly confuse the jury and that the assaults committed by Dixon were not sufficiently similar to the present case to find that their probative value outweighed potential prejudice. At the heart of this conclusion was the judge's determination that the Dixon assaults were for sexual gratification and thus lacked a common link with the offense against Brown. He stated:
... both of those episodes were the targets of a sexual attack by Mr. Dixon. The purpose of the attack was sexual gratification. That's totally absent in this *19 case and I think creates a substantial dissimilarity, substantial difference, a difference between this crime, and those crimes that you seek to introduce.
Before turning to the principles governing the admissibility of Rule 55 evidence it is important to address the trial judge's conclusion that the Brown attack lacked a sexual element. While it is true that Brown claimed that rape was not involved in the assault, she told Officer Sunkett that her assailant was "pulling on her clothes." Sunkett noted in his police report that the crime was a "possible rape attempt." Either separately or together these aspects of Sunkett's testimony would have challenged the conclusion that the Brown attack lacked a sexual element and placed Brown's testimony on that score in issue. However, the trial judge would not allow Sunkett to testify on cross-examination as to the contents of his report. This exchange took place:
The Court: ... It seems to me you have a right to call this man afterwards. Ms. Maybrook: After Miss Carolyn Brown testifies.
The Court: To rebut her testimony. That, I would permit. I think, before the officer is excused, you should make known to him that you will call him back tomorrow, possibly.[1]
We think that the judge's limitation on cross-examination of Sunkett was mistaken. Even prior to Brown taking the stand her statement as to the attacker "pulling on her clothes" was admissible under Evid. R. 63(4)(b) as an excited utterance. While the exact amount of time which elapsed between the attack and Sunkett's arrival is unclear, Sunkett was only a block away from the scene when he received the call to which he immediately responded. He was the first person to arrive and speak to Brown who had collapsed and, as the State's brief concedes, was in a "daze of shock." In our view, Brown's statement to Sunkett was made under circumstances indicating the presence of a continuing state of excitement that contraindicates *20 fabrication, provides trustworthiness and justifies admission under the rule. State v. Lyle, 73 N.J. 403 (1977); Atamanik v. Real Estate Management, Inc., 21 N.J. Super. 357 (App. Div. 1952). Moreover, an Evid. R. 8 hearing should have been held as to the statement that this was a "possible rape attempt" to determine whether the "rape" concept came from Brown or Sunkett. If it came from Brown, it was also admissible under the rule.
This material was critically important because it clearly challenged the story which Brown told on the stand and supported the similiarity between the attack on Brown and the Dixon attacks. By limiting cross-examination of Sunkett, an ordinarily unassailable judgment call, the judge cut out of the case the crucial contents of Sunkett's police report and wrongly concluded that Brown's testimony as to the nonsexual nature of the attack was uncontroverted. Thus, his exclusion of the "other crimes" evidence was based on a conclusion which he should have known was essentially in dispute. At the very least, this was an issue for the jury.
Evid. R. 55 states:
Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.
It is well established that a defendant may use similar "other crimes" evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt of the crime charged against him. State v. Garfole, 76 N.J. 445 (1978), aff'd following remand 80 N.J. 350 (1979); 2 Wigmore, Evidence (3d ed. 1940) § 304 at 205; § 341 at 245. Of particular significance, Garfole, supra, also established that a lower standard of similarity of offenses is required to justify the use of such evidence by a defendant than is required when the State offers the evidence:
... when the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to *21 rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made. See Evid. R. 1(2). The application of a modified requirement of relevancy to the proffer by a defendant is additionally justified by the consideration that the defendant need only engender reasonable doubt of his guilt whereas the State must prove guilt beyond a reasonable doubt. [Id. at 452-453]
Nevertheless, the Garfole court noted that the admissibility of "other crimes" evidence when offered by the defense requires a "highly discretionary determination" by the trial judge regarding the probative strength of the evidence as opposed to the possible undue time and confusion which might result from its admission. State v. Garfole, supra, 76 N.J. at 456-457; Evid. R. 4.
From a Garfole relevance standpoint, we view the case this way: All three incidents occurred within a block of Dixon's home in the early hours of the morning. Dixon committed one offense before the Brown attack and went on to commit one after it. All three victims were grabbed suddenly and threatened. All incidents involved the use of a knife. In one case the victim was stabbed eight times, in this case nine times. In two cases the victim was actually raped and in this case there was evidence from which a sexual element could be inferred. We think that these similarities meet the diminished standard established in Garfole for the defensive use of "other crimes" evidence.
Here the Evid. R. 4 issues of undue consumption of time and jury confusion were not particularly weighty given the fact that only two other crimes were involved and Dixon had pled guilty to one of them. The trial judge noted that testimony as to that incident could be "relatively brief and succinct, short in duration." Indeed, it is difficult to conceive of a case in which the introduction of Evid. R. 55 testimony would be easier. Since there is no counterweight in the Garfole balance, we think that the "other crimes" should have been admitted. In our view that evidence, along with other evidence in the case, tended to negate defendant's guilt. It would have established that another suspect (whose description meshed with information provided *22 by the only objective eye witness, Barrette) existed, and had committed similar crimes at the same location and at the same time of day both before and after this offense. It undercut the credibility of Brown in issue in several ways: on the question of whether the attack had a sexual nature or not, and more importantly, on the viability of her identification of defendant. This identification which was made by Brown alone was far from unassailable. At the scene of the attack she denied knowing her attacker. Again in the hospital she claimed ignorance and only several days later did she firmly identify him.
The question of the viability of her identification is more seriously at issue when viewed in light of the evidence of Janet Wintner which was excluded at trial. Wintner, a defense investigator, took a statement from Brown on May 27, nearly four weeks after the crime. Unfortunately, this statement was not given to the prosecutor until the day of trial and was excluded by the trial judge because of the discovery violation. Wintner's testimony would have suggested to the jurors that nearly a month after the crime, and after Brown had positively identified defendant to the police, Brown was still unsure who attacked her. Wintner said that on May 27, 1983, Brown stated: "Well who else could it be. It was him [defendant]. I wasn't robbed or raped. Who else could it be?"
While the decision to allow or exclude testimony based upon a discovery violation is ordinarily within the judge's discretion, here the Wintner testimony was so important that its exclusion had an effect on the fairness of the trial. The judge should have recessed the trial to allow the State an opportunity to investigate Wintner's proposed testimony. Brown's statement to Wintner not only undercut her trial testimony rather dramatically but also provided a rational explanation to the jurors as to why Brown would testify wrongly on the stand, i.e., because the only way she had identified defendant was by process of elimination. Coupled with the Rule 55 evidence, the testimony of Wintner provided a defense to defendant which tended to engender a reasonable doubt as to his guilt.
*23 We reverse and remand for a new trial at which the Rule 55 evidence and the testimony of Wintner will be admitted. At the retrial, Sunkett should be allowed to testify to so much of his exchange with Brown as the trial judge determines is admissible after an Evid. R. 8 hearing. Obviously, if Brown testifies before Sunkett his testimony may be admissible independent of Evid. R. 63(4) as a prior inconsistent statement. Evid. R. 22(b).
We find that the balance of defendant's contentions are entirely without merit. R. 2:11-3(e)(2).
Reversed and remanded.
NOTES
[1] On the last day of trial, after the Rule 55 evidence had been ruled out of the case definitively, defendant's attorney attempted to call Sunkett to the stand. When it was determined that Sunkett was not present in court, the attorney elected to proceed without him.