241 N.J. Super. 345 (1990)
575 A.2d 31
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ERIC JORGENSEN, A/K/A GARY YOUNG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 19, 1990.
Decided May 18, 1990.
*346 Before Judges BRODY, MUIR, Jr. and SKILLMAN.
Raymond R. & Ann W. Trombadore, attorneys for appellant (Vincent LeBlon, on the brief).
Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney for respondent (Kathleen P. Holly, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Following a jury trial, defendant was convicted of unlawfully distributing less than one-half ounce of cocaine, a third-degree *347 crime, in violation of N.J.S.A. 2C:35-5a(1) and -5b(3). In addition to the statutory penalties and laboratory fee, the trial judge imposed a three-year term of probation conditioned upon defendant's serving a 364-day jail term. The judge admitted defendant to bail after conviction because of the substantial issue raised on appeal and the absence of a serious threat to the community if defendant remains at large. R. 2:9-4. The substantial issue is the admissibility of circumstantial evidence offered by defendant that a specific person who looks like him may have committed the crime.
The crime was committed on a Friday night during a three-hour encounter allegedly between defendant, who was then a patron of a bar, and an undercover police detective. The State alleges that the detective struck up a conversation with defendant, whom he had not previously known, in the course of which he asked defendant to sell him crank (methamphetamine). Some time later, a motorcyclist arrived and delivered about a gram of cocaine to defendant who thereupon sold it to the detective for $50. The defense was misidentification.
The only witness to the transaction who testified was the detective. He recounted in detail his meeting with a man he identified as defendant. He testified that defendant had the typical appearance of a "biker," which included long hair, a full beard and moustache, and tattoos on both arms. Defendant was wearing a painter's cap. The detective did not immediately arrest defendant after the sale because he wanted to continue his undercover activities. Defendant drove away from the bar in a blue automobile whose license number the detective noted and placed in his contemporaneous reports.
With the aid of the license number, two officers of the county prosecutor's fugitive unit located defendant two-and-one-half months later at his parents' home. Before taking him into custody, and without having given him the Miranda warnings, the officers questioned defendant about his identity because he told them that his name was not the name of the person they *348 were there to arrest.[1] The arresting officers testified that while in defendant's bedroom examining documentary proof to determine his true identity, they saw a painter's cap that matched the undercover detective's later testimonial description of the cap worn by the person who had sold him the cocaine. Not being familiar with the case, the officers did not realize the significance of the cap and denied defendant's request to bring it with him.
When they arrived at county police headquarters with defendant, the officers took him to a room where they seated him alone before a television camera to await the undercover detective. The detective soon arrived and, while standing in another room so as not to disclose his identity to defendant, he identified defendant by viewing his image on a television monitor.
The State's case rested on the credibility of the undercover detective's testimony, which was vulnerable in several respects. Although identification was almost certain to be an issue in the prosecution, none of the detective's contemporaneous written reports contains a description of defendant, his tattoos or the hat he allegedly wore. The detective acknowledged that while working undercover he had purchased drugs from many people, but the trial judge did not permit defendant's attorney to explore the subject with him to establish whether he may have confused defendant with some other cocaine seller. Also, although the detective testified that at the time of the sale two other undercover officers were nearby to back him up, neither of those officers testified and the trial judge did not permit defendant's attorney to ask the detective whether they were in a position to have seen him and defendant together.
The State presented two items of evidence of defendant's guilt that did not rest entirely on the detective's credibility. *349 First, the arresting officers testified that defendant answered to the nickname "Pep" when arrested, a name the detective had noted in his reports as the name of the person who had sold him the cocaine. Second, defendant owned a blue automobile bearing the license number that the detective had noted in his reports.
Defendant's main argument is that the judge erred in denying him the opportunity to present evidence to the jury that a person who looked like him knew his nickname and was using his car when the crime was committed. The evidence proferred was the testimony of Teresa Eckes, defendant's former girlfriend. She testified out of the presence of the jury, pursuant to Evid.R. 8, that at the time of the crime, defendant lived in the home of Al Martin and his wife. It was her opinion that Martin and defendant then looked "[v]ery much the same." Each had the same color long hair and each had a full beard and moustache. They were "about the same size" and each had tattoos on both arms. She identified a photograph as portraying a "[v]ery good" likeness of Martin at the time of the alleged crime.
Eckes further testified that defendant had purchased the blue automobile from Martin's sister and that Martin frequently drove it because he did not have insurance or registration for his own car. More particularly, during the period when the cocaine sale occurred, Martin took the blue car to pick up his wife at her work "[e]very Friday" night after which both couples would spend the evening together at a bar. The sale occurred on a Friday night. The witness was unable to testify from her own knowledge as to whether Martin had the automobile on the night in question, however, because she was then attending a country and western music concert in West Virginia. There was no evidence as to whether Martin used or dealt in drugs. The witness, the assistant prosecutor (who had advance notice of this evidence) and defense counsel all agreed that Martin's whereabouts at the time of trial were unknown.
*350 The trial judge excluded the evidence. He defined the standard of admissibility to be that the evidence must have the capacity to raise the probability, as distinguished from the possibility, that Martin and not defendant had sold the cocaine to the detective:
The intent of the defendant is to offer to the jury the suggestion and only a suggestion that it's possible that Martin committed the offense, and, of course, as I've indicated, the law does not deal in possibilities because we recognize that when dealing with oral testimony or observations by human beings, anything is possible. We deal, at a minimum, with probabilities, and I will not permit the jury to speculate.
The judge then found that "there is not the slightest evidence to suggest that Al Martin had the use of the car on the evening in question, which was July 15, 1988." The judge indicated that he would reconsider the matter if defendant presented additional evidence that Martin had used the automobile on the night in question. Defendant did not testify.
A defendant in a criminal case may present evidence that the crime with which he has been charged was committed by another. State v. Sturdivant, 31 N.J. 165, 179, 155 A.2d 771 (1959), cert. den. 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873 (1960). Indeed, the inference that another committed the crime is raised in the defense of almost every case where there is no dispute that the crime was committed. The standards for admitting such evidence vary among jurisdictions, but the standard in New Jersey is clear:
It would seem in principle to be sufficient if the proof offered has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case.... The question of relevancy ultimately rests in a sound exercise of discretion. [Ibid.]
The Court reaffirmed the Sturdivant standard, rejecting the adoption of a more restrictive standard, in State v. Koedatich, 112 N.J. 225, 298, 548 A.2d 939 (1988), cert. den. 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989), appeal after remand 118 N.J. 513, 572 A.2d 622 (1990).
Thus admissibility depends on whether the proffered evidence "has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." Here, the *351 trial judge erred by requiring that to be admissible the evidence must have the capacity to establish the probability of another's guilt.
Applying the standard is a fact-sensitive task. The offer of proof in this case differs from the usual case of this kind where a defendant attempts to link a particular third person's criminal motive or similar criminal conduct to the crime charged. Here defendant's evidence is focused less on the likelihood of Martin's having committed the crime than on undermining critical evidence of his own guilt. Because a reasonable doubt may be engendered by the paucity of the State's evidence, State v. Jones, 224 N.J. Super. 527, 530, 540 A.2d 1330 (App.Div. 1988), a defendant may present evidence that has a rational tendency to lessen the credibility of "an essential feature of the State's case" without necessarily rendering entirely unbelievable the evidence being attacked. See Johnson v. U.S., 552 A.2d 513, 517 (D.C. 1989), where the court said:
There is no requirement that the proffered evidence must prove or even raise a strong probability that someone other than the defendant committed the offense. Rather, the evidence need only tend to create a reasonable doubt that the defendant committed the offense. In this regard, our focus is on the effect the evidence has upon the defendant's culpability, and not the third party's culpability. [Emphasis in original.]
Given the similarity of defendant's and Martin's appearance, the jury might have been moved by Eckes's additional testimony to question the accuracy of the undercover detective's identification of defendant. She testified that Martin used defendant's automobile every Friday night during the period in question. See State v. Radziwil, 235 N.J. Super. 557, 566, 563 A.2d 856 (App.Div. 1989), certif. granted 118 N.J. 233, 570 A.2d 983 (1989) (evidence that defendant became intoxicated every weekend admissible as habit to prove intoxication on weekend when crime committed). She also testified that the two men knew each other so that Martin knew defendant's nickname and may have used it to conceal his own identity.
*352 The jury need not have believed Eckes in order for her testimony to have raised a reasonable doubt about key evidence that corroborated what was otherwise an identification based solely upon the detective's credibility. The excluded evidence was not only highly relevant but had "a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." The evidence should have been admitted.
In the event there is a retrial, the trial judge should take a more indulgent approach to admitting evidence of the undercover detective's other purchases of drugs to the extent that those activities are relevant to whether he may have confused this defendant with others. The judge should similarly approach the admissibility of evidence as to whether the detective's two back-up officers were in a position to have seen defendant with the detective and therefore could have identified him had the State called them to testify. Before admitting the evidence, however, the judge should conduct a hearing to determine whether such disclosures would compromise police investigations, and weigh that concern against defendant's constitutional right to conduct an effective cross-examination. See State v. Williams, 239 N.J. Super. 620, 571 A.2d 1358 (App.Div. 1990); State v. Crudup, 176 N.J. Super. 215, 220, 422 A.2d 790 (App.Div. 1980).
Defendant raises the following points in his brief that are clearly without merit and need not be discussed, R. 2:11-3(e)(2):
THE TRIAL COURT'S FAILURE TO EXCLUDE THE PRETRIAL OUT-OF-COURT IDENTIFICATION OF A DEFENDANT WITHOUT COUNSEL AFTER INITIATION OF CRIMINAL PROCEEDINGS IN VIOLATION OF DEFENDANT'S RIGHT TO COUNSEL WAS ERROR.
THE TRIAL COURT ERRED IN ADMITTING THE OUT-OF-COURT STATEMENTS ALLEGEDLY MADE BY DEFENDANT SINCE THE STATE FAILED TO ESTABLISH THAT DEFENDANT HAD BEEN ADVISED OF HIS CONSTITUTIONAL RIGHTS MANDATED BY MIRANDA.
We either have discussed the remaining points in his brief or they have been rendered moot by our remand.
*353 The judgment of conviction is reversed and the matter remanded for a new trial.
NOTES
[1] Defendant had registered the automobile in an assumed name and acquired other proof of that false identity in order to obtain a driver's license in that name after his own license had been revoked.