268 N.J. Super. 504 (1993)
634 A.2d 101
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RODNEY BULL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 1993.
Decided November 16, 1993.
*506 Before Judges BAIME, CONLEY and VILLANUEVA.
Zulima V. Farger, Public Defender, attorney for appellant (Neal M. Frank, Designated Counsel, of counsel and on the brief).
Andrew K. Ruotolo, Jr., Union County Prosecutor, attorney for respondent (Robert A. Suarez, of counsel and on the brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Following a jury trial, defendant was convicted of first-degree robbery, contrary to N.J.S.A. 2C:15-1 (count one); third-degree terroristic threats, contrary to N.J.S.A. 2C:12-3(b) (count two); second-degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(1) (count three); fourth-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(d) (count five), and third-degree *507 possession of a weapon for unlawful purposes, contrary to N.J.S.A. 2C:39-4(d) (count six). The State's motion for a persistent offender extended term pursuant to N.J.S.A. 2C:44-3(a) was granted. An extended term of fifty years with a parole disqualification of eighteen years was imposed on count one. Counts two and six were merged with count one. A concurrent ten-year custodial term with a five-year parole disqualification was imposed on count three. A consecutive term of eighteen months with a nine-month parole disqualification was imposed on count five. A $90.00 Violent Crime Compensation Board penalty was also imposed.
The convictions arose from the following evidence. On or about 12:00 a.m. on April 20, 1990, Dulcinea Goncalves, a nursing assistant at Elizabeth General Medical Center in Elizabeth New, Jersey, finished her shift and was walking to her car when a man grabbed her hair and jacket, placed a sharp object against her back, and said, "Do not scream or say anything or I kill you." She gave him her pocketbook, and moved her arm to her back where she touched something plastic in the same location as the sharp object. She then was thrown to the ground and beaten.
At the same time, two fellow employees, Walter Hix and William Brady, who were leaving in their car, observed the man run after Goncalves. Worried for her safety, they drove back towards the location where she was last seen. After hearing muffled screams, they exited the car and ran in the direction of the screaming. There, Hix saw a man on top of Goncalves. The man ran away as Hix and Brady approached. Brady gave chase, but was unable to catch the assailant.
As a result of the beating, Goncalves suffered a broken jaw, a fractured orbit bone, a fractured bone in the middle ear, T.M.J. residuals, eight broken teeth, and abrasions and contusions over eighty percent of her body. She remained in the hospital for one week recuperating from her injuries.
Shortly after the attack, Hix found a butcher knife in close proximity to the location where Goncalves was assaulted. The knife was ultimately given to Officer Frank Sebasco of the Elizabeth *508 Police Department. It was sent to the F.B.I. for fingerprint analysis. That analysis identified the fingerprints as belonging to defendant.
During the police investigation of the assault, Hix looked through several hundred photographs but was unable to identify the perpetrator. Defendant's photograph was not included. A week or two later, he and Goncalves viewed a line up of six men, including defendant. Goncalves was unable to make a positive identification, however, Hix identified defendant as Goncalves's assailant. On April 30, defendant was arrested and charged with the assault. At the time of his arrest, a plastic utility knife was found in his possession. During the trial Goncalves testified that that knife felt like the sharp object that had been held to her back during the assault.
On appeal, defendant contends:
POINT I: THE TRIAL COURT ERRED IN FAILING TO MERGE THE DEFENDANT'S CONVICTION OF UNLAWFUL POSSESSION OF A WEAPON UNDER N.J.S.A. 2C:39-5(d) WITH DEFENDANT'S CONVICTION FOR "ARMED ROBBERY" UNDER N.J.S.A. 2C:15-1. (Not Raised Below).
POINT II: THE TRIAL COURT ERRED IN REFUSING TO PERMIT THE DEFENDANT TO INTRODUCE EVIDENCE OF A PRIOR ASSAULT OCCURRING WITHIN AN HOUR OF THE ASSAULT IN THE INSTANT CASE, WHICH PRESUMABLY WAS COMMITTED BY ANOTHER INDIVIDUAL.
POINT III: THE COURT ERRED IN ADMITTING S-5 (THE UTILITY KNIFE) INTO EVIDENCE WHEN THERE WAS NO TESTIMONY IDENTIFYING IT AS BEING USED IN ANY OF THE CRIMES CHARGED.
POINT IV: THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO MOVE TO DISMISS THE INDICTMENT BASED UPON A LACK OF EVIDENCE PRESENTED TO THE GRAND JURY. (Not Raised Below).
POINT V: THE COMBINATION OF ERRORS COMMITTED BY THE TRIAL COURT DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.
POINT VI: THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
We have carefully considered these contentions in light of the transcripts, briefs, and applicable law. We are convinced points III, IV and V are clearly without merit. R. 2:11-3(e)(2). With the exception of the merger issue raised in point I, we find no abuse of *509 discretion in the sentence and our conscience is not shocked. State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Ghertler, 114 N.J. 383, 387-88, 555 A.2d 553 (1989); State v. Dunbar, 108 N.J. 80, 87, 527 A.2d 1346 (1987). We address points I and II, in reverse order.

I.
During the trial, James Torres, a security guard for the hospital, testified that around 11:00 p.m. he had seen a man "hanging around the lobby and scoping out the nurses, you know, coming in and out." Shortly thereafter, at about 11:20 p.m., he was told that someone was being mugged in the parking lot. When he went outside, he observed a woman on the sidewalk, bleeding and took her into the hospital. He later identified a photograph of the individual he had seen hanging around the lobby. That photograph was placed in evidence. It is fairly apparent, though not entirely clear from a reading of the transcript, that the photograph was not of defendant. Moreover, Torres was extensively questioned on his description of the man he had seen around 11:00 p.m. That description is different from the description given by Hix and Goncalves of Goncalves' attacker.
During defense counsel's cross-examination of Detective Mularz, one of the investigating officers, the following occurred:
Q. Now, early in the investigation you spoke to a James Torres?
A. Yes.
Q. And James Torres was involved in taking another employee of the hospital to her home some, I don't know hour before Dulcinea's assault?
A. Within a half hour before.
Q. And 
[PROSECUTOR]: Judge, may I interject? I would like to be heard at sidebar.
THE COURT: I don't think there's any necessity for that because I know what the basis of the objection is and [Defense counsel] is not going to get into the issues as to why he did that.
[DEFENSE COUNSEL]: I would like to be heard, Judge.
THE COURT: Is that it?

*510 [PROSECUTOR]: I think we're on the same track but there's a concern in terms of the witness as well as [DEFENSE COUNSEL] that's got me worried.
THE COURT: There's to be no discussion about what Mr. Torres did or why, other than he was not there, period.
Next question. Let's go.
[DEFENSE COUNSEL]: I would like to be heard on that, if I may.
....
[DEFENSE COUNSEL]: The fact that the victim of the Torres matter was unable to make any identification or the fact that the police believed that that victim was assaulted by a different person doesn't mean that it's not relevant, that Torres might have been describing a man who, in fact, also assaulted Dulcinea since the photograph which she 
THE COURT: You have every right in the world to give the description that Torres gave him as to what he saw but you do not have a right to go into the issue that there was a prior assault that day that may involve another male. I am not opening this case up to a mini trial within a mini under Rule 4. It would take a substantial amount of time that would clearly be substantially outweighing any probative value.
[DEFENSE COUNSEL]: I'm not interested in establishing that there was another assault by another man. I'm interested in establishing that sometime prior to Dulcinea's assault there was a man who was seen and that James Torres ultimately picked out a photograph that in the general sense fits the character 
THE COURT: You don't have a right to do that. I don't want to get into the second assault issue.
However, defense counsel then asked the officer:
Q. Mr. Torres gave you information on the 24th of April, did he not?
A. Yes.
Q. And you understood that Mr. Torres was an employee of the hospital who was present at the scene at about 11 p.m. on the evening in question?
....
A. I would say a little bit later than 11 p.m., judging by what he's saying in time because Mr. Torres had left and approximately 20 minutes later he was aware of this incident. So that's later than 11 p.m.
Q. And among other things, Mr. Torres looked at some photographs in the possession of the Elizabeth Police Department?
A. Yes, he did.
Q. And he selected a photograph of a person he had seen in the area, correct?
A. That he felt he had seen, he wasn't absolutely certain.
Q. And he said 97 percent, is that not the case?
A. That's what he said.
[DEFENSE COUNSEL]: Can I have an item marked?

*511 Q. I show you D-6 for I.D. and ask you if that's a picture of the photograph that was shown to  that Mr. Torres selected?
A. Yes, it is.
As we have previously noted, the photograph ultimately was placed in evidence and, presumably, is not of defendant.
Defendant argues in point II that the trial judge erred in ruling that he could "give the description that Torres gave him as to what he saw but you do not have a right to go into the issue that there was a prior assault that day that may involve another male." Defendant claims such constituted "other-crime" evidence which he sought to use defensively to negate his guilt.
A "defendant may use similar other-crimes evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt of the crime charged against him." State v. Garfole, 76 N.J. 445, 453, 388 A.2d 587 (1978), aff'd following remand, 80 N.J. 350, 403 A.2d 888 (1979); see State v. Williams, 214 N.J. Super. 12, 20, 518 A.2d 234 (App.Div. 1986).
[W]hen the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made. See Evid.R 1(2). The application of a modified requirement of relevancy to the proffer by a defendant is additionally justified by the consideration that the defendant need only engender reasonable doubt of his guilt whereas the State must prove guilt beyond a reasonable doubt.

[Garfole, 76 N.J. at 452-53, 388 A.2d 587].
Admissibility of such evidence, however, requires a "highly discretionary determination" by the trial judge. Id. at 456-57, 388 A.2d 587. See also Williams, 214 N.J. Super. at 20-21, 518 A.2d 234.
The "other crimes" evidence may also be viewed as evidence submitted by a defendant to prove that someone else committed the thefts for which he was being tried. See State v. Koedatich, 112 N.J. 225, 297-304, 548 A.2d 939 (1988), cert. denied sub nom., Koedatich v. New Jersey, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989), appeal after remand, 118 N.J. 513, 572 *512 A.2d 622 (1990); State v. Jorgensen, 241 N.J. Super. 345, 351, 575 A.2d 31 (App.Div.), certif. denied, 122 N.J. 386, 585 A.2d 389 (1990).
A defendant of course may seek to prove that another agency produced the [offense] with which he is charged. It would seem in principle to be sufficient if the proof offered has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case.... We think it not enough to prove some hostile event and leave its connection with the case to mere conjecture. Somewhere in the total circumstances there must be some thread capable of inducing reasonable men to regard the event as bearing upon the State's case. The question of relevancy ultimately rests in a sound exercise of discretion.
[State v. Sturdivant, 31 N.J. 165, 179, 155 A.2d 771 (1959), cert. denied sub nom., Sturdivant v. New Jersey, 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873 (1960) (citations omitted)].
Thus, although evidence that another committed the offense may be admitted defensively, where third-party evidence shows no more than "some hostile event" and leaves to "mere conjecture" its connection with the case, it may properly be excluded. Koedatich, 112 N.J. at 301, 548 A.2d 939. See also State v. Gookins, 263 N.J. Super. 58, 63, 621 A.2d 968 (App.Div.), certif. granted, 133 N.J. 446, 627 A.2d 1150 (1993).
Here, at best the evidence of an earlier assault,[1] demonstrated that a person other than defendant had engaged in a similar attack. But there is not even "mere conjecture" that the assault upon Goncalves was committed by that other individual. Not only was the identification by Hix of defendant as the culprit unassailable, but the butcher knife found where the beating had occurred contained defendant's fingerprints. Compare State v. Williams, 214 N.J. Super. at 21, 518 A.2d 234.
Perhaps more importantly, the jury heard all the evidence there was to present about that other alleged assault. And, although *513 the trial judge ruled that defense counsel could not introduce evidence that Torres identified a photograph of someone else, that is precisely what he was able to, and did, do. And that photograph, D-6, was marked into evidence. Any error, then, was harmless.

II.
Defendant's third-degree conviction of possession of a weapon with a purpose to use it unlawfully against another, contrary to N.J.S.A. 2C:39-4(d), was merged with his first-degree armed robbery conviction. His fourth-degree conviction for possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, was not. He claims it should have also merged. Preliminarily, we note that N.J.S.A. 2C:39-5(d) may constitute a lesser-included offense to N.J.S.A. 2C:39-4(d). State v. Berrios, 186 N.J. Super. 198, 203, 451 A.2d 1338 (Law Div. 1982). See N.J.S.A. 2C:1-8(a)(1). The trial judge, thus, could have merged the conviction on count five into the conviction on count six. See State v. Jones, 213 N.J. Super. 562, 568, 517 A.2d 1219 (App.Div. 1986).
In any event, we will consider whether the unlawful possession conviction on count five should have merged with the armed robbery conviction under traditional merger concepts. Those concepts arise from the basic principle that "`an accused [who] has committed only one offense ... cannot be punished as if for two.'" State v. Cole, 120 N.J. 321, 325-26, 576 A.2d 864 (1990) (citing State v. Miller, 108 N.J. 112, 116, 527 A.2d 1362 (1987)). See State v. Dillihay, 127 N.J. 42, 46, 601 A.2d 1149 (1992).
We have long since abandoned a mechanical approach to merger issues. Rather, merger is determined based upon a balanced consideration of various factors, including the elements of the offense, the Legislature's intent in enacting the particular statutes, and the specific facts of the case. Id. at 47, 601 A.2d 1149. See State v. Best, 70 N.J. 56, 62-63, 356 A.2d 385 (1976). And so, where a defendant has been convicted "for contemporaneous *514 separate offenses which are, in fact or by legislative intent, indistinguishable, then the resulting convictions must be merged." Id. at 61, 356 A.2d 385.
In Best, convictions for possession of a dangerous weapon, a knife, and robbery while armed with the knife merged because the element for the former of possession of a dangerous weapon and the element for the latter of possession of a knife during the commission of the robbery were identical, the possession of the knife was an integral part of the armed robbery, and there was no evidence that defendant possessed the knife at a time before or after the robbery, or possessed it for a purpose other than to commit the robbery. Id. at 67, 356 A.2d 385. See State v. Mirault, 92 N.J. 492, 503-05, 457 A.2d 455 (1983). Accord State v. Vasquez, 265 N.J. Super. 528, 563-64, 628 A.2d 346 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993); State v. Nutter, 258 N.J. Super. 41, 59, 609 A.2d 65 (App.Div. 1992); State v. Porter, 210 N.J. Super. 383, 395-96, 510 A.2d 49 (App.Div.), certif. denied, 105 N.J. 556-57, 523 A.2d 191 (1986). Compare State v. Truglia, 97 N.J. 513, 521, 480 A.2d 912 (1984); State v. Russo, 243 N.J. Super. 383, 411-12, 579 A.2d 834 (App.Div. 1990), certif. denied, 126 N.J. 322, 598 A.2d 882 (1991); State v. Ortiz, 124 N.J. Super. 189, 192, 305 A.2d 800 (App.Div. 1973) (possession of a dangerous knife did not merge with armed robbery because defendant was found in possession of the knife when he was arrested sometime after the robbery).
Even where, however, the same conduct forms the basis for several offenses, merger may not be appropriate where additional or separate proof of a statutory element is required for one or where there exists a legislative intent "to fractionalize the offense." State v. Miller, 108 N.J. 112, 119, 120-21, 527 A.2d 1362 (1987); State v. Fraction, 206 N.J. Super. 532, 539, 503 A.2d 336 (App.Div. 1985), certif. denied, 104 N.J. 434, 517 A.2d 426 (1986). See State v. Cole, 120 N.J. 321, 331-35, 576 A.2d 864 (1990). Thus, a conviction under N.J.S.A. 2C:39-5(b) for possession of a handgun without a permit does not merge with robbery while armed *515 with the same gun. State v. Cooper, 211 N.J. Super. 1, 22, 510 A.2d 681 (App.Div. 1986); State v. Anderson, 198 N.J. Super. 340, 359, 486 A.2d 1311 (App.Div.), certif. denied, 101 N.J. 283, 501 A.2d 946 (1985). See also State v. Jones, 213 N.J. Super. at 569, 517 A.2d 1219 (unlawful possession of a weapon under N.J.S.A. 2C:39-4d does not merge with aggravated assault under N.J.S.A. 2C:12-1b(1)). Accord State v. Johnson, 203 N.J. Super. 127, 136, 495 A.2d 1367 (App.Div.), certif. denied, 102 N.J. 312, 508 A.2d 195 (1985). Cf. State v. Mirault, 92 N.J. at 505-06, 457 A.2d 455.
We recognize that in State v. Jones we held that a conviction under N.J.S.A. 2C:39-4d did not there merge with an armed robbery conviction and in doing so focused on what we perceived to be different statutory elements. 213 N.J. Super. at 569, 517 A.2d 1219. But we can not discern from that opinion the specific facts concerning the convictions and whether, for instance, there was evidence of possession of the weapon for a substantial period before or after the robbery. See State v. Ortiz, 124 N.J. Super. at 192, 305 A.2d 800.
Here, there were two knives. One was the butcher knife with defendant's fingerprints found in the area of the assault. The other was the utility knife found on defendant when he was arrested some time after the assault. Merger, then, might not be appropriate for the jury could have found defendant guilty of armed robbery as to one of the knives and unlawful possession as to the other. Or, if the utility knife was the weapon which elevated the robbery to armed robbery, possession of the utility knife a substantial period of time thereafter would provide a separate basis for a separate conviction. However, the evidence concerning the utility knife's presence during the robbery was subject to question, for the victim did not see the sharp object, but only felt it and identified the utility knife as that object only by feel. The jury could have found reasonable doubt, therefore, as to whether that was the knife in defendant's possession during the robbery. The armed robbery and the unlawful possession convictions, then, may have been premised only upon the butcher knife. *516 If that were the basis for those convictions, merger would be required.
Our difficulty in resolving this issue is that neither the indictment, the jury charge or the verdicts identified which knife formed the basis for the convictions. Without merger, then, defendant may well be punished "as if for two" offenses. Merger implicates a defendant's substantive constitutional right. State v. Dillihay, 127 N.J. 42, 46, 601 A.2d 1149 (1992); State v. Miller, 108 N.J. 112, 116, 527 A.2d 1362. It has been said that where a defendant is the cause for ambiguities that may inhere in a record complicating resolution of a merger issue, defendant should bear the burden of the consequences. State v. Truglia, 97 N.J. at 518, 480 A.2d 912 (negotiated plea, sentencing according to an agreement that benefits defendant, and merger first raised on appeal). But where these circumstances do not exist, we think defendant should not be penalized. Where one set of facts would support merger and another not, and neither the charge to the jury nor the verdict gives any clue as to which set of facts the jury chose, the convictions should merge. See State v. Williams, 213 N.J. Super. 30, 35-37, 516 A.2d 265 (App.Div. 1986), certif. denied, 107 N.J. 104, 526 A.2d 177 (1987). Cf. State v. Hardison, 99 N.J. 379, 389-91, 492 A.2d 1009 (1985); State v. Davis, 68 N.J. 69, 84 n. 8, 342 A.2d 841 (1975). But see State v. Miller, 108 N.J. at 120, 527 A.2d 1362.
With the exception of the sentence on count five, the judgment of conviction is affirmed. Count five is merged with count one and the consecutive sentence on count five is vacated. The matter is remanded to the trial judge for entry of an amended judgment. We leave to the trial judge's discretion a resentencing. See State v. Rodriguez, 97 N.J. 263, 273-75, 478 A.2d 408 (1984); State v. Espino, 264 N.J. Super. 62, 73, 624 A.2d 27 (App.Div. 1993).
NOTES
[1] We note Torres' testimony could be construed as establishing no more than that a man other than defendant was seen loitering around the lobby a short time before the assault, for when describing the assault he said occurred about 11:20 he also said a "kitchen knife" was found by Hix. He identified the butcher knife found with defendant's prints as that knife. It is likely that there was no "other" assault, but in fact the bleeding women he saw was Goncalves.