108 N.J. Super. 322 (1970)
261 A.2d 374
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RONALD E. EMMETT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1970.
Decided January 26, 1970.
*323 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. Remo M. Croce, Deputy Attorney General, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Francis E. Gazdzinski argued the cause for respondent.
*324 The opinion of the court was delivered by GOLDMANN, P.J.A.D.
The State appeals from a County Court judgment of acquittal finding defendant not guilty and reversing his conviction in the municipal court for violating N.J.S.A. 39:4-50(b) (operating a motor vehicle while ability to operate is impaired by the consumption of alcohol), remitting the $50 fine and costs imposed in the municipal court, and restoring his driving privileges which had been suspended for a period of six months. The State also appeals from the County Court's denial of its motion to vacate the judgment of acquittal and to restore the matter to the trial list.
Defendant had been convicted in the Wrightstown Municipal Court for violating N.J.S.A. 39:4-50(b) and, pursuant to R.R. 3:10-1 et seq. (now R. 3:23-1 et seq.), appealed to the Burlington County Court. At the hearing de novo and shortly after direct examination of the State's first witness, a police officer, had begun, the trial judge noted that he did not have before him the complaint or judgment of conviction that had been filed in the municipal court. A recess was taken in an attempt to locate the complaint and judgment, which should have been forwarded to the county clerk by the municipal court clerk as provided by R.R. 3:10-4 (now R. 3:23-4(a)). The attempt proved unsuccessful and, after extended colloquy between the trial judge and counsel, the defense attorney's motion for judgment of acquittal was granted. The State's subsequent motion to vacate the judgment and to restore the matter to the trial calendar was denied after argument.
The trial judge acknowledged that neither of the parties was to blame for the municipal court clerk's failure to send up the record. He appears to have been of the view that to continue the matter until the municipal court record could be obtained would prejudice defendant, since he was in court and ready for trial  this in face of the fact that both parties were ready to proceed and that by virtue of the notice of appeal which was before the court the trial *325 judge could not help but be aware of the nature of the complaint and conviction. Nothing in R.R. 3:10-1 et seq. makes compliance with R.R. 3:10-4 a jurisdictional requirement. Although no postponement was necessary, the judge could readily have continued the matter for a week or so in order that the municipal court record might be forwarded.
Defense counsel's motion for acquittal was undoubtedly inspired by what the trial judge had said in the course of the colloquy. The deputy attorney general had suggested that his office or the municipality be given an opportunity to submit the necessary documentation, stating, "Our office is not in a position to know what papers are submitted. We never are aware of what papers are submitted." In granting defendant's motion, the trial judge seemed to be of the opinion that calendar control required an on-the-spot disposition of the pending proceedings. He stated that the whole purpose of the rules is that municipal court appeals move expeditiously. In our view, the judgment was unwarranted in the circumstances; calendar problems cannot excuse such precipitant action.
The rules are to be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. They are a means to justice, and not an end in themselves; their purpose is to provide for a just determination of every proceeding. See R.R. 1:27A and R.R. 3:1-2, now part of R. 1:1-2. And see Handelman v. Handelman, 17 N.J. 1, 10-11 (1954), where the court said that our rules of procedure were not designed to create an injustice and added complications, but "to broaden the procedural powers of our courts to the end that just dispositions on the merits may be facilitated and determinations on the basis of procedural niceties may be avoided."
Fundamental fairness dictated that neither of the parties be made to suffer, or justice be thwarted, by the failure of the municipal court clerk to send up the complaint and *326 judgment of conviction. For the County Court to have found defendant not guilty, reversed his conviction, remitted his fine and costs and restored his suspended driving privileges, amounted to a perversion of justice.
Defendant argues that he would be placed in double jeopardy if this court were to order a retrial. We note, again, that the trial had barely begun when the court interposed the fact that the complaint and judgment of conviction were lacking. The police officer had testified to no more than his employment, his experience with drunken driving cases and the time and place he was observing traffic. With nothing more in the record than this, the trial judge entered a judgment which recited that the court had "considered the evidence and the testimony" and therefore found defendant not guilty and reversed the conviction.
As was said in State v. Farmer, 48 N.J. 145 (1966), which dealt with a County Court declaration of a mistrial on its own motion,
* * * the double jeopardy protection does not mean that once an accused has been put on trial regularly, the proceeding must run its ordinary course to judgment of conviction or acquittal. The rule does not operate so mechanistically. If some unexpected, untoward and undesigned incident or circumstance arises which does not bespeak bad faith, inexcusable negligent or inadvertence or oppressive conduct on the part of the State, but which in the considered judgment of the trial court creates an urgent need to discontinue the trial in order to safeguard the defendant against real or apparent prejudice stemming therefrom, the Federal and State Constitutions do not stand in the way of declaration of a mistrial. And this is true even if the conscientious act of the trial judge may be characterized as the product of "extreme solicitude" or "overeager solicitude" for the accused. See, Gori v. United States, supra, 367 U.S., at p. 367, 81 S.Ct., at p. 1525. Moreover, if an incident or circumstance of that nature moves the court to order a mistrial not only to safeguard the right of the defendant to a full and fair trial, but also to protect the right of society to have its trial processes applied fully and fairly in the due administration of the criminal law, there is even less basis for a claim of trespass upon the privilege against double jeopardy. See, A.L.I. Proposed Official Draft, Model Penal Code (1962) § 1.08. Clearly the societal right to have the accused tried and punished if found guilty stands side by side with the right of the accused to be prosecuted fairly and not oppressively. While the public right, when *327 it must be considered alone, may not weigh as heavily in the scale as that of the defendant because of the constitutional dimensions of the privilege against double jeopardy and the superior capacity of the State to investigate and prepare for prosecutions, nevertheless when exercise of the trial court's discretion may fairly be said to serve both interests, there is certainly less substantial reason to question its propriety.
There can be no doubt that the primary motive for the mistrial here was a sincere effort on the court's part to protect and assist Farmer. * * *
The same rationale should underline our determination in this case. At the least, the trial judge should have declared a mistrial or granted an adjournment. What he did exceeded his judicial power.
Reversed and remanded for a full trial de novo in the County Court.