263 N.J. Super. 58 (1993)
621 A.2d 968
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BRETT GOOKINS, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LINDA FALCONE, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT CUNNINGHAM, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WENDALL LITTLES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1993.
Submitted January 20, 1993.
Decided February 19, 1993.
*59 Before BILDER, BAIME and WALLACE, JJ.
Timothy P. Reilly argued the cause for appellant Brett Gookins.
Frederick H. Martin, Assistant Prosecutor, argued the cause for respondent in A-3392-91T1 (Edward F. Borden, Jr., Camden County Prosecutor, attorney; Mr. Martin, of counsel and on the letter brief).
Gary D. Ginsberg, attorney for appellant Linda Falcone.
Stephen W. Guice, attorney for appellant Robert Cunningham.
Michael A. Aimino, attorney for appellant Wendall Littles.
Edward F. Borden, Jr., Camden County Prosecutor, attorney for respondents in A-3400-91T2, A-3453-91T2 and A-3518-91T5 (Frederick H. Martin, Assistant Prosecutor, of counsel and on the letter briefs).
The opinion of the court was delivered by BILDER, J.A.D.
*60 These are four separate appeals from orders of the Law Division denying motions by the separate defendants in which they sought new trials on grounds of newly discovered evidence and/or on grounds that such action is required in the interest of justice. See R. 7:4-7. All stem from pled convictions of driving while under the influence of alcohol, N.J.S.A. 39:4-50 which arose from arrests and subsequent breathalyzer tests made by Patrolman Robert Kane of the Oaklyn Police Department. Kane later was charged and pled guilty to falsifying breathalyzer examination readings and unlawfully taking or exercising unlawful control over moveable property of the arrested drivers. Although none of the defendants were involved in the matters which led to criminal charges against Kane, each contends that Kane's criminal conduct represents newly discovered evidence of fraud relating to the reliability and validity of their breathalyzer test results and requires the grant of a new trial in the interest of justice. Their separate appeals have been consolidated for the purpose of this opinion.
Initially, it is important to understand the nature of Kane's criminal conduct. On August 29, 1991, Kane entered guilty pleas to accusations charging second degree misconduct in office involving the falsification of breathalyzer test results and third degree misconduct in office involving the taking of money belonging to arrested drivers. The first offense dealt with during that plea hearing charged that on May 7, 1991 Kane falsified a breathalyzer examination reading performed on Dwight Newlin by recording a .10 blood alcohol content and a .11 blood alcohol content when, in fact, the true reading was .00 blood alcohol and that he had exercised unlawful control of $30 belonging to Dwight Newlin or the Camden County Prosecutor's Office[1] with purpose of depriving the owner thereof *61 during an alleged drunk driving car stop and processing of Newlin. The accusations also referred to fourteen other incidents with other drivers in which motor vehicle stops were made and moneys taken. With Kane's permission, his colloquy was supplemented by the prosecutor who, on the basis of the files, described Kane's conduct in clearer terms.
These are all basically car stops, some for drunk driving, others for motor vehicle violations, expired tags, that sort of a thing, but they are all car stops. They are all situations where the driver would be removed from the car. He would be searched, his wallet would be taken. His or her wallet would be taken and then they would be taken to the station and when the wallets would be returned, certain moneys would be missing. So the scenario is almost identical in each case to the one that the prosecutor's office orchestrated.
After the prosecutor's recital, Kane said he didn't remember the individual details but he did not dispute the account. And he acknowledged that in each matter it was his purpose to keep the money and in fact he did so.
Turning back to these appeals. In each case, the defendant was stopped by Kane, arrested and taken to the Oaklyn police station. There, Kane administered a breathalyzer test and informed the driver of the reading, in each case over .10[2]. At least three of the defendants, Falcone, Cunningham and Littles admitted consuming some alcohol.[3] The record of Gookins is silent on the subject. Faced with the evidence of the breathalyzer results, each pled guilty to the charge of driving while intoxicated. There is no contention that any of the defendants had any money taken or missing.
*62 The use of Kane's conviction must be examined from two perspectives. First, as evidence which might be used to affect credibility. See Biunno, Current N.J. Rules of Evidence, Comment 14 to Evid.R. 20 (1993) at 302. It is to this use that much of the lower courts' opinions were directed and we entertain no doubt of the correctness of their rulings, substantially for the reasons given by the municipal court judge and adopted by the Law Division judge. Also see People v. Sherman, 83 Misc.2d 563, 372 N.Y.S.2d 546, 548 (1975).
The more critical aspect of Kane's convictions is the question of whether they represent material evidence casting doubt on the justice of defendants' DWI convictions  on the reliability of the breathalyzer test results recorded by Kane. We entertain no doubt that if Kane's convictions evidenced that false readings had been recorded for any of these particular defendants (as was done to Newlin), justice would require that such a defendant be given a new trial. The question in this case is whether Kane's convictions and the facts upon which they were based constituted evidence that similar misconduct occurred with respect to these DWI defendants. We are persuaded they did not. The pattern displayed in the misconduct situations did not occur in any of these cases. Kane's misconduct was part of a scheme to obtain money. In these cases, there is no evidence of any such efforts. Standing alone, the fact that these defendants were stopped by Kane does not create the logical nexus to permit the inference that he falsified the breathalyzer results.[4]
To be relevant there must be sufficient similarities between the arrests in which Kane was guilty of misconduct and the *63 arrests of these defendants to permit an inference that they also involved the same misconduct. Professor Wigmore has described the required similarity as "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." 2 Wigmore, Evidence (3d Ed. 1940) § 304 at 202.
We agree with our dissenting colleague that a lower standard of similarity of offenses is required for the defensive use of "other crimes" evidence, however the relaxation refers to the elimination of prejudice to the defendant as a consideration, not to the continued need for relevance. See State v. Garfole, 76 N.J. 445, 452-453, 388 A.2d 587 (1978); State v. Williams, 214 N.J. Super. 12, 20, 518 A.2d 234 (App.Div. 1986).
Relevancy  a sufficient identity of features to evidence similar misconduct  must be the hallmark of admissibility. Were it otherwise, the misconduct of a police officer would require the reopening of limitless cases with which he was involved. The assumption that misconduct in one situation or one setting implies misconduct in all situations and settings is untenable. Relevance is the screen which permits the admission of evidence of similar identifiably associated conduct while screening out evidence of misconduct which has no relationship with the conduct on trial. See Evid.R. 1(2).
The claimed newly discovered evidence is simply not relevant to the issue of defendants' guilt  and, indeed, had it been available at the time of their original municipal court appearance, it would not have been admissible.
Affirmed.
WALLACE, J.S.C. (Temporarily Assigned), dissenting.
As noted by the majority, the question in this case is whether Kane's convictions and the facts upon which they were based constituted evidence that similar misconduct occurred with respect to these defendants charged with driving while under the *64 influence of alcohol, in violation of N.J.S.A. 39:4-50. The majority concludes that since Kane's misconduct was part of a scheme to obtain money and since the defendants herein do not allege Kane attempted to take any money, "the fact that these defendants were stopped by Kane does not create the logical nexus to permit the inference that he falsified the breathalyzer results." I cannot agree. As our Supreme Court noted in State v. Garfole, 76 N.J. 445, 452, 388 A.2d 587 (1978), "a lower standard of degree of similarity of offenses may justly be required of a defendant using other-crimes evidence defensively than is exacted from the State when such evidence is used incriminatorily." In explaining why a lower standard of similarity is required to justify the use of such evidence the Court stated:
[W]hen the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made. The application of a modified requirement of relevancy to the proffer by a defendant is additionally justified by the consideration that the defendant need only engender reasonable doubt of his guilt whereas the State must prove guilt beyond a reasonable doubt.
Id. at 452-53, 388 A.2d 587 (citation omitted); see also State v. Williams, 214 N.J. Super. 12, 21-22, 518 A.2d 234 (App.Div. 1986).
I would apply this reduced standard of similarity of offenses to allow evidence concerning Kane's convictions for misconduct in falsifying breathalyzer tests and taking money from defendants. This evidence is relevant because Kane admitted that he falsified breathalyzer readings in his attempt to steal money from victims he stopped. In the incident that directly led to Kane's arrest, he falsely reported breathalyzer readings of .10 and .11 when in fact the undercover operator of the vehicle ingested no alcohol at all. Furthermore, in two of the counts in the accusation, the amount of money taken by Kane was small enough, (i.e. $5.12 and $7.00) that in the excitement of the events taking place, a victim might not have realized the money *65 was missing. The majority concludes that because these defendants herein, do not claim that Kane either took or attempted to take any money that there is not sufficiently similar conduct to conclude the evidence is relevant. However, in light of the small amounts taken by Kane on several occasions, I do not find the failure by these defendants to allege theft is fatal to their effort to show similarity of offenses.
Moreover, the assistant prosecutor conceded that if Kane had plead guilty before these defendants came to trial, that evidence of Kane's misconduct would be relevant at the trial of these defendants. I agree. Further, the record reveals that part of Kane's criminal activity occurred on August 19, 1989 as contained in Count 16 of the accusation against Kane. Except for defendant Little, the defendants herein were charged after August 19, 1989 with driving while under the influence of alcohol.[1] I see no valid reason to make the date of Kane's plea be the determinative factor, as suggested by the State. Rather, the focus should be whether the evidence is relevant. Kane pled guilty on August 29, 1991. Once it became known by these defendants that Kane had pled guilty to misconduct in office by falsifying a breathalyzer reading and taking money from innocent drivers, defendants herein filed motions for new trials on the basis of fundamental fairness and newly discovered evidence. In my view, Kane's conduct in falsifying prior breathalyzer tests results in other cases as part of a scheme to take money from the victims is similar enough to the conduct here to be relevant and admissible under the standard established in Garfole, supra.
I would reverse and remand for a new trial in each case.
NOTES
[1] During Kane's plea hearing, the prosecutor explained that this was an undercover operation in which Newlin and another undercover Burlington County investigator were used as a driver and passenger in a vehicle in Oaklyn. The $30 may therefore have been the property of the Prosecutor's Office.
[2] According to their affidavits the reported test results were: Falcone 0.12%; Cunningham 0.18%. The breathalyzer report for Littles shows 0.18%. The record as to Gookins is devoid of information on this score.
[3] According to their affidavits: Falcone had two glasses of blush wine; Cunningham had two draft beers. According to the breathalyzer report, Littles admitted to three beers. The record as to Gookins is devoid of information on this score.
[4] The logical equation may be analogized to the Evid.R. 55 problem of using a different crime to show identity. For such use, it must be shown the other crime with which the defendant is identified is "so nearly identical in method as to earmark the crime as defendant's handiwork." See State v. Sempsey, 141 N.J. Super. 317, 323, 358 A.2d 212 (App.Div. 1976), certif. den., 74 N.J. 272, 377 A.2d 677 (1977); Biunno, Current N.J. Rules of Evidence, Comment 9 to Evid.R. 55 (1993) at 530.
[1] Defendant Brett Gookins was arrested for DWI on July 31, 1990; defendant Robert Cunningham was arrested for DWI on February 10, 1990; defendant Wendall Littles was arrested for DWI on June 6, 1987; and defendant Linda Falcone was arrested for DWI on September 30, 1989.