631 A.2d 150

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RICHARD HILL, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 28, 1993—Decided August 11, 1993.

Before BRODY, LANDAU and HUMPHREYS, JJ.

*Gary D. Ginsberg,* attorney for appellant (*Brian P. O'Connor,* on the brief).

*Edward F. Borden, Jr.,* Prosecutor of Camden County, attorney for respondent (*Frederick H. Martin,* Assistant Prosecutor, of counsel and on the letter-brief).

The opinion of the court was delivered by

BRODY, J.A.D.

On September 8, 1988, defendant was convicted in a Municipal Court of operating a motor vehicle (a motorcycle) while under the influence of liquor (DWI). *N.J.S.A.* 39:4–50. Patrolman Robert Kane testified for the State. He reported that defendant's breath registered .14% on the breathalyzer and described his observations of defendant's erratic driving. The Municipal Court judge found that defendant was guilty both *per se* because he registered a breathalyzer reading of .10% or more by weight of alcohol in his blood and because the manner in which he operated his motorcycle bespoke intoxication. The judge suspended defendant's driver's license for six months and imposed the mandatory minimum fine of $250. Defendant did not appeal the conviction.

He now appeals from an order denying his motion for a new trial based on newly discovered evidence that on August 29, 1991, Officer Kane pled guilty to the crime of official misconduct, a violation of *N.J.S.A.* 2C:30–2. Defendant filed his motion in the Municipal Court on October 15, 1991, more than three years after his conviction. He submitted no evidence to support the motion. He claimed in his brief, however, that Kane's misconduct was "falsifying breathalyzer test results and stealing money from

citizens subject to investigation and arrest." Defendant did not claim that Kane admitted having falsified defendant's breathalyzer reading. Municipal Court Judge Rand and later, on appeal, Superior Court Judge Natal denied the motion. Judge Natal held that the motion was time-barred. He added that even if it were not time-barred, Kane's plea in 1991 was not probative of whether he testified truthfully at defendant's trial in 1988.

We agree that defendant's motion for a new trial was barred by the two-year limitations period of *R.* 7:4–7, a period that may not be enlarged by the parties or the court. *R.* 1:3–4(c).

The criteria for granting a new trial and the limitation periods for seeking such relief differ depending on whether the judgment sought to be vacated had been entered in a criminal matter in the Superior Court (*R.* 3:20–1), in a Municipal Court matter (*R.* 7:4–7) or in a civil matter in the Superior Court (*R.* 4:50).

We first compare the Rule pertaining to criminal matters in the Superior Court with the Rule pertaining to Municipal Court matters. Rule 3:20–1, the Superior Court Rule, provides in relevant part:

> The trial judge on defendant's motion may grant him a new trial if required in the interest of justice. If the trial was by the judge without a jury, he may, on defendant's motion for a new trial, vacate the judgment if entered, take additional testimony and direct the entry of a new judgment.

Rule 3:20–2 provides in relevant part that a "motion for a new trial based on the ground of newly-discovered evidence may be made at any time. . . ." By contrast *R.* 7:4–7, the Municipal Court rule, provides in relevant part:

> The court may, on defendant's motion, grant him a new trial if required in the interest of justice. The court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before, or within 2 years after, final judgment. . . . In no event shall this rule be construed to limit the right of a defendant to apply to the court for a new trial on the ground of fraud or lack of jurisdiction.

Thus, although in both kinds of cases the standard for granting a new trial is "if required in the interest of justice," there is no limitations period for making such a motion in a Superior Court

criminal matter but there is a two-year limitations period in Municipal Court matters such as a DWI conviction. *See Romano v. Kimmelman,* 96 *N.J.* 66, 92, 474 *A.*2d 1 (1984) where the Court declined to relax or enlarge the two-year limitations period even for a defendant who had been convicted of DWI by a false breathalyzer reading caused by radio frequency interference. We must therefore address the threshold issue, not presented in criminal matters in the Superior Court, of whether the two-year limitations period applies in light of the exception for "fraud," a term not defined in the Rule.

That brings us to the Rule for obtaining relief from a civil judgment on the ground of "fraud." Caselaw has interpreted what fraud means as used in that Rule. Rule 4:50–1 provides in relevant part:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party ... from a final judgment or order for the following reasons: ... (c) fraud (whether heretofore denominated intrinsic or extrinsic)....

Rule 4:50–2, incidentally, imposes a one-year limitations period for making such a motion on the ground of fraud.

Justice Brennan, then writing for our Supreme Court, held that perjurious testimony may constitute fraud warranting a new trial under the civil practice Rule. *Shammas v. Shammas,* 9 *N.J.* 321, 328, 88 *A.*2d 204 (1952). He cautioned, however, that to warrant relief the party claiming that an issue was decided on the basis of perjurious testimony must do much more than raise a reasonable question respecting the witness's credibility:

> And in any event, a court may not set aside a final judgment merely because some testimony is perjured. All perjury is an affront to the dignity of the court and to the integrity of the judicial process, but the law is not without other effective means to punish the perpetrator of the crime. [Citation omitted.] Perjured testimony that warrants disturbance of a final judgment must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been willfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result. [*Id.* at 330, 88 *A.*2d 204.]

*See also Pavlicka v. Pavlicka,* 84 *N.J.Super.* 357, 202 *A.*2d 200 (App.Div.1964).

We conclude that the same test must be applied to the adequacy of the proof of perjurious testimony offered to avoid the two-year limitations period in *R.* 7:4–7. A defendant must present "clear, convincing and satisfactory evidence" of perjury. Here, defendant presented no evidence at all. He merely claimed in his brief that three years after his conviction for DWI, Kane pled guilty to misconduct in office based on making false breathalyzer readings.

Defendant's attorney conceded the point. The following excerpt from the argument before Judge Natal demonstrates the total absence of evidence before the court and ultimately the concession by defendant's attorney that he was unable to avoid the time bar:

[DEFENDANT'S ATTORNEY]: Well, in that regard, your Honor, there was nothing presented to Judge Rand that evidences the fraud. Mr. Hill would hope—

THE COURT: (Interposing) Okay.

[DEFENDANT'S ATTORNEY]: (Interposing) In the retrial of this matter to use evidence rules 47 and 55.

THE COURT: I know, Counsel, but you would not even get to a retrial if you have not made a showing there was any fraud to warrant going beyond the two-year bar.

Do you follow what I am saying? You have to get past that before you get to a retrial.

[DEFENDANT'S ATTORNEY]: Yes, your Honor.

THE COURT: What you are conceding to me at this point is there was nothing shown to Judge Rand on your motion to warrant him setting aside the verdict.

[DEFENDANT'S ATTORNEY]: That's correct, your Honor.

THE COURT: Okay. Anything else you want to tell me?

[DEFENDANT'S ATTORNEY]: No, your Honor, that's it.

We must affirm the order denying defendant's motion. The motion was barred by the two-year limitations period of the Rule.

Ordinarily there would no point in extending the discussion beyond our holding. However, another Part of this court recently affirmed orders denying new trial motions in four other cases where Officer Kane's readings of breathalyzer test results led to DWI convictions. *State v. Gookins,* 263 *N.J.Super.* 58, 621 *A.2d*

968 (App.Div.1993) (Wallace, J., dissenting).[1] There the defendants presented evidence of the crimes to which Kane had pled guilty and evidence of when he committed them. If this Part had heard those appeals with this one, we probably would have considered that evidence even though defendant had failed to present it in his case. Also, we now have a copy of the transcript of the *retraxit* hearing at which Kane entered his guilty pleas.[2] We will therefore discuss whether defendant would have overcome the time bar had he presented below the evidence that we now have.

We first emphasize that given the threshold issue we must consider, our approach to the evidence is not the same as the approach in *Gookins*. There the evidence of Kane's misconduct had to be evaluated in terms of whether "the interest of justice" required giving those four defendants a new trial. Before we can reach that issue we must consider whether that evidence is "clear, convincing and satisfactory" proof that Kane committed perjury at defendant's trial with respect to both the accuracy of the breathalyzer reading and his description of defendant's driving, the alternate bases for the DWI judgment.

The transcript of Kane's *retraxit* hearing reveals that he entered pleas to sixteen counts of a seventeen-count accusation pursuant to a plea agreement. The transcript does not indicate the crime charged in the count that was to be dismissed.[3] Kane pled guilty to one count of second-degree misconduct in office, described as falsifying a breathalyzer reading on May 7, 1991—thirty-two months after he testified at defendant's trial. The remaining pleas were to fifteen counts of third-degree misconduct in office, each described as unlawfully taking cash, in amounts ranging from $5.12 to $150, from people he had arrested. Al-

---

[1] The two-year time bar apparently was not raised as an issue in any of those cases.

[2] Without seeking leave from this court, defendant included the copy in the appendix to his brief without objection from the State.

[3] Defendant has not given us a copy of the accusation.

though not revealed in the transcript, we gather from the dissenting opinion in *Gookins, Id.* at 65, 621 *A*.2d 968, that the accusation shows the earliest theft to have occurred on August 19, 1989—almost a year after he testified at defendant's trial.

Kane did not give a detailed factual account of his crimes, but he agreed with the assistant prosecutor's following summary of his criminal conduct:

> Your Honor, I don't know if you want specific details as to each one which may take some time. We have the files but I would have to read them. These are all basically car stops, some for drunk driving, others for motor vehicle violations, expired tags, that sort of thing, but they are all car stops. They are all situations where the driver would be removed from the car, he would be searched, his wallet would be taken, his or her wallet would be taken and then they would be taken to the station and when the wallets would be returned certain moneys would be missing. So the scenario is almost identical in each case to the one that the prosecutor's office orchestrated.[4]

It thus appears that Kane's primary motive in committing these crimes was to steal money from the wallets of people he had arrested. He falsified the breathalyzer reading in 1991 to mask the fact that he had no basis for making that arrest.

From our reading of defendant's trial transcript, we find no evidence that Kane ever had possession of defendant's wallet. He arrested defendant at his home with the help of two back-up police officers.

The State's evidence at the DWI trial was presented through Kane's testimony. He testified that on June 19, 1988, he was summoned from his home a few minutes after 3:00 a.m. "to assist Patrolman Horneff on a burglary in progress call at the corner of East Beechwood and the White Horse Pike." As he was driving his personal car northbound on White Horse Pike to the scene of the burglary, Kane slowed down to turn right onto East Beechwood:

> At that point, as I was getting past the telephone pole to make the right turn, I heard a screech. I looked in my rear view mirror and I noticed that a motorcycle

---

4 The supposed victim of the false breathalyzer reading and of one of the thefts was an undercover police officer.

came along side of me. The brakes squealed, the vehicle turned sideways, and something—I hear something hit the side of my car. At that point, the vehicle continued skidding northbound on the Pike. It skidded one side and slid the other. It started rolling a little bit more without the brakes off and then hit the brakes again. It went into on-coming traffic, made a big gigantic U-turn striking the curb on the other side, shut off its lights, and then headed west on West Beechwood.

The officer then changed his direction and followed the motorcycle along West Beechwood and into defendant's driveway. Defendant drove his motorcycle into his garage. Kane thereupon confronted defendant and accused him of having struck his car. Defendant then went inside his house, leaving Kane by the garage shouting for him to come outside. Kane asked a neighbor, who happened to be outside, to phone for police assistance. Defendant and his mother came out of the house. When two additional police officers arrived, one of whom was Officer Horneff, they arrested defendant. Kane testified that defendant had the appearance of being intoxicated, which included slurred speech, an unsteady walk and the aroma of alcohol on his breath. At headquarters defendant initially submitted to the breathalyzer test, but then refused to blow properly into the machine for the second reading. The first reading was .14%.

Officer Horneff testified respecting defendant's failure to have an inspection sticker on his vehicle. Defendant admitted that offense and it was the subject of another conviction. The questioning of Officer Horneff, which was not extensive, did not produce answers that were in conflict with Kane's testimony.

Defendant testified that he had not struck Kane's car, was not intoxicated at the time, did not drive erratically before turning onto West Beechwood, and did not turn off the lights of his motorcycle while Kane followed him. He testified that he did not overshoot the turn onto West Beechwood, but conceded that his turn was a "little bit wider than usual because of looking back to see what the light [of a vehicle behind him] was." He testified that he was in his house over five minutes before he came outside with his mother. During that time he roused his mother and "took a tablespoon of codeine three, a cough syrup, DC with

codeine and I took ampicillin 500. I took a nerve pill because when I get sick—a head cold and all, my nerves get all kind of jittery and I have to take a nerve pill." Defendant suggested in his testimony that the medicine may have accounted for the high breathalyzer reading because it "had a high volume of alcohol in it."

Defendant also admitted that earlier that evening, "around ten or eleven," he had "[a]bout three drafts" of twelve-ounce frosted mugs of beer. He explained that he may have walked unsteadily that night because of a congenital foot defect that "throws my balance off." He showed the trial judge X-rays that purported to depict the defect. "My toes were broken when I was born and they overlap each other some time." The judge accepted the exhibit but stated that he did not have the expertise to give it any evidential weight. Finally, defendant suggested that his cold may have prevented him from blowing properly into the breathalyzer the second time.

The neighbor who summoned the back-up police, had known defendant and his mother for ten years. She testified that the motorcycle's lights were on when it entered the driveway and went into the garage. Defendant's mother corroborated her son's testimony about taking cough medicine while he was in the house.

The only evidence at trial that Kane had a motive for testifying falsely was evidence that he had submitted a $150 damage claim to defendant's insurance carrier for damage to his car. Defendant's attorney insinuated that in the face of defendant's denial that he had struck Kane's car, the insurance claim gave Kane a personal stake in having defendant found guilty of the DWI charge.

The Municipal Court judge stated in his findings that defendant's credibility was undermined by the testimony that he consumed alcoholic cough medicine knowing that a police officer was outside waiting to arrest him.

Even if defendant had submitted the transcript of Kane's *re-traxit* hearing on his motion for a new trial, the trial judge still

would have had to deny the motion. That evidence is not "clear, convincing and satisfactory" proof that Kane committed perjury at defendant's trial. It cannot reasonably be inferred that Kane falsely arrested defendant and fabricated his account of the events that night just so some insurance carrier would pay him $150 for damage he had previously sustained to his car. That inference is not appreciably strengthened, certainly not to the level of clear and convincing evidence, by the evidence that over a year later Kane began to arrest people without probable cause in order to steal cash from their wallets and evidence that three years later he falsified a breathalyzer reading to justify one of his false arrests.

Affirmed.

HUMPHREYS, A.J.S.C. (Temporarily Assigned, dissenting).

Early one morning Richard Hill drove his motorcycle into his garage. As he was leaving his garage a police officer drove onto Mr. Hill's property, arrested him and charged him with driving his motorcycle while drunk.

Mr. Hill's subsequent DWI conviction was based almost solely on (1) the testimony of the arresting Police Officer Robert Kane; and (2) a breathalyzer test reading of .14 per cent. Officer Kane administered the breathalyzer test. He did not give Mr. Hill any other sobriety tests.

Officer Kane testified at the trial that Mr. Hill exhibited a strong odor of alcohol and that his speech was "superbly" slurred. Officer Kane testified that Mr. Hill while in the police garage had to hold onto the wall for support and swayed constantly.

Officer Kane's testimony was shot through with inconsistencies. His testimony was contradicted in a number of important respects by the defendant, his mother and a neighbor.

Police Officer, Anthony Horneff, was on the scene the night of Mr. Hill's arrest and drove Mr. Hill to Police Headquarters. The Prosecutor called Officer Horneff as a witness at the trial, but did

not ask him a single question about Mr. Hill's allegedly drunken condition.

In my judgment, this was a very close case. However, the breathalyzer reading and Officer Kane's testimony carried the day, and Richard Hill was convicted of drunken driving.

The Municipal Court Judge after reviewing Mr. Hill's driving record imposed the minimum sentence.

About a year later Officer Kane plead guilty to a multiple count criminal accusation charging him with arresting motorists, falsely charging them with drunken driving, and other offenses, falsifying breathalyzer test results, and then stealing their money.

The Assistant Prosecutor described Officer Kane's crimes as follows.

> These are all basically car stops, some for drunk driving, others for motor vehicle violations, expired tags, that sort of a thing, but they are all car stops. They're all situations where the driver would be removed from the car. He would be searched, his wallet would be taken. His or her wallet taken and then they would be taken to the station and when the wallets would be returned, certain monies would be missing. So the scenario is almost identical in each case to the one that the Prosecutor's Office orchestrated." (The orchestration refers to an undercover operation which resulted in Officer Kane's arrest.)

In a scholarly opinion, the majority concludes that Richard Hill is entitled to a new trial only if he has established by clear, convincing and satisfactory evidence that Officer Kane committed perjury.

In *State v. Gookins*, 263 *N.J.Super.* 58, 621 *A.*2d 968 (App.Div. 1993), another panel dealt with four separate convictions arising from Officer Kane's crimes. The majority of the court in *Gookins* in an equally scholarly opinion by Judge Bilder, concluded that the critical aspect is whether Officer Kane's crimes "represent material evidence casting doubt on the justice of defendants' DWI convictions—on the reliability of the breathalyzer test results recorded by Kane." *Id.* at 62, 621 *A.*2d 968. The issue, the majority said, is "whether Kane's convictions and the facts upon which they were based constituted evidence that similar misconduct occurred with respect to these DWI defendants." *Ibid.*

The majority in *Gookins* concluded that there were insufficient similarities between the other false arrests and the arrests of the four DWI defendants, to permit an inference that the same misconduct was involved. The majority in *Gookins* emphasized the importance of relevancy as follows:

> Relevancy—a sufficient identity of features to evidence similar misconduct—must be the hallmark of admissibility. Were it otherwise, the misconduct of a police officer would require the reopening of limitless cases with which he was involved. The assumption that misconduct in one situation or one setting implies misconduct in all situations and settings is untenable. Relevance is the screen which permits the admission of evidence of similar identifiably associated conduct while screening out evidence of misconduct which has no relationship with the conduct on trial. *See Evid.R.* 1(2).

Judge Wallace, dissenting in *Gookins,* differs with the majorities' analysis of the facts. He concludes that Officer Kane's "conduct in falsifying prior breathalyzer test results in other cases as part of a scheme to take money from the victims is similar enough to the conduct here to be relevant and admissible...." (1978)).

With all respect to my colleagues, I believe the following is the proper standard. When strong and compelling evidence leads to the conclusion that an innocent person was convicted of a serious offense by reason of police misconduct, then that conviction must be set aside.

This standard rests in an ancient bedrock principle of our criminal justice system: "It is better that ten guilty persons escape than one innocent suffer." *Vol. 1V. Blackstone's Commentaries,* Chapter 27. As pungently said by Justice Morris Pashman, "... nothing is as so abhorrent as convicting an innocent person." *State v. Garfole,* 76 *N.J.* 445, 459, 388 *A.*2d 587 (1978) (dissenting opinion).

The record here strongly indicates that Officer Kane was engaging in the same criminal conduct with respect to Mr. Hill that the officer engaged in with other motorists. The record is clear that Officer Kane repeatedly arrested motorists, falsely charged them with drunken driving and falsified their breathalyzer tests. In

1989 he accounted for ninety-two of the 110 drunken driving arrests of the Oaklyn Police Department. Eleven drunken driving convictions in other cases have been set aside as a result of his crimes.

According to an article in the New Jersey Law Journal 134 *N.J.L.J.* 986, a Special Master appointed by Chief Judge John Gerry of the U.S. District Court is conducting a case by case review of 165 cases to determine whether there is sufficient evidence to uphold the drunken driving convictions in which Officer Kane was involved. If the evidence is insufficient, then municipal, county and state fines will be refunded and the convictions expunged from the Division of Motor Vehicle records.

The time periods in the various cases overlap the time period here. Mr. Hill was arrested in June of 1988. One of the defendants in *Gookins* was arrested in June of 1987. (*See* Footnote 1, p. 65 of *Gookins, supra* ). Another Kane arrest was reportedly in January 1989. *See* 134 *N.J.L.J.* 986.

Furthermore, here as in his other crimes, Officer Kane had a personal stake. He was driving his own car and claimed that Mr. Hill hit his car. Officer Kane submitted a damage claim for $160 to Mr. Hill's insurance company. Mr. Hill denied that he struck the officer's car. One cannot escape the conclusion that this officer with his penchant for arresting and then stealing decided to have pre-existing damage to his personal car repaired at the expense of Richard Hill.

The evidence of innocence is compelling. The defendant's mother testified that her son wasn't staggering and gave no indication that he was under the influence of alcohol; that there was no damage to the son's motorcycle; and that the police didn't even look to see if there was any damage to the motorcycle. A neighbor testified that she saw Mr. Hill drive into the driveway in his usual way with his headlights on. Officer Kane testified that Mr. Hill's headlights were off. Officer Horneff offered no support for his fellow police officer's testimony.

In short, this conviction rests upon the evidence of a corrupt police officer who likely acted in this case, as he acted in many other cases, to "frame" an innocent person in order to line his pockets.

The majority rely on our rules of court to deny Mr. Hill any relief. We should never forget that our court rules are a

means to justice, and not an end in themselves; their purpose is to provide for a just determination of every proceeding.... (they are) not designed to create an injustice and added complications, but 'to broaden the procedural powers of our courts to the end that just disposition on the merits may be facilitated and determinations on the basis of procedural niceties may be avoided'.

[*State v. Emmett*, 108 *N.J.Super.* 322, 325, 261 *A.*2d 374 (App.Div.1970).]

In *Romano v. Kimmelman*, 96 *N.J.* 66, 92, 474 *A.*2d 1 (1984) our Supreme Court implied that it would consider relaxing the time bars in our court rules on seeking new trials, if it appeared likely that breathalyzer test results had been tainted resulting in a widespread miscarriage of justice.

A judicial remedy should "always be available" to protect the innocent. *See* address by U.S. Attorney General Homer Cummings before the Institute on Federal Rules of Criminal Procedure. *3 F.R.D.* 287. *See also* opinion of Judge Weinfeld in *U.S. v. Kaplan*, 101 *F.Supp.* 7, 13–14 (S.D.N.Y.1951).

Justice demands that Richard Hill be given a new trial.