637 A.2d 1255

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. BRETT GOOKINS, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. LINDA FALCONE, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ROBERT CUNNINGHAM, DEFENDANT–
APPELLANT.

Argued November 9, 1993—Decided March 21, 1994.

*Timothy P. Reilly* argued the cause for appellant Brett Gookins.

*Gary D. Ginsberg* argued the cause for appellant Linda Falcone (*Mr. Ginsberg,* attorney; *Brian P. O'Connor,* on the brief).

*Stephen W. Guice* argued the cause for appellant Robert Cunningham.

*Frederick H. Martin,* Assistant Prosecutor, argued the cause for respondent (*Edward F. Borden, Jr.,* Camden County Prosecutor, attorney).

The opinion of the Court was delivered by

O'HERN, J.

Defendants in these three cases pleaded guilty in the Oaklyn Municipal Court to driving while under the influence of alcohol, contrary to *N.J.S.A.* 39:4–50. The principal evidence against them consisted of breathalyzer blood-alcohol-concentration readings in excess of .10%. In a long series of cases, we have sustained the scientific reliability of breathalyzers and other breath-testing devices. *See State v. Downie,* 117 *N.J.* 450, 569 *A.2d* 242, *cert. denied,* 498 *U.S.* 819, 111 *S.Ct.* 63, 112 *L.Ed.2d* 38 (1990); *Romano v. Kimmelman,* 96 *N.J.* 66, 474 *A.2d* 1 (1984); *State v. Johnson,* 42 *N.J.* 146, 199 *A.2d* 809 (1964). Without overwhelming evidence of reliability, we would never have allowed machines to displace the fundamentally human function of fact finding. *See State v. Tischio,* 107 *N.J.* 504, 527 *A.2d* 388 (1987) (holding that breathalyzer measurement standing alone is sufficient evidence for drunk-driving conviction so long as test was conducted within reasonable time after defendant was actually driving), *appeal dismissed,* 484 *U.S.* 1038, 108 *S.Ct.* 768, 98 *L.Ed.2d* 855 (1988). Legislative reliance on breathalyzer tests stems from a belief that use of such tests will help "curb one of the chief instrumentalities of human catastrophe, the drunk driver." *State v. Grant,* 196 *N.J.Super.* 470, 476, 483 *A.2d* 411 (App.Div.1984). The usefulness of the breathalyzer derives from its objectivity, which forecloses many pretextual defenses predicated on a defendant's individual reaction to alcohol intake. *See State v. Hammond,* 118 *N.J.* 306, 316–18, 571 *A.2d* 942 (1990) (holding that involuntary-intoxication defense does not apply to drunk driving). However, the objectivity, and hence the value, of the breathalyzer is irreparably undermined when the person operating the machine falsifies the results to fabricate evidence of guilt. The arresting officer in these three cases pleaded guilty to such fabrication in another drunk-driving case and has been implicated in similar misconduct in other cases. That misconduct compels us to vacate the guilty pleas and accompanying judgments of conviction in these three cases.

## I

The facts of the three cases are similar. Brett Gookins, Linda Falcone, and Robert Cunningham all pleaded guilty in Oaklyn Municipal Court to driving while under the influence of alcohol. Officer Robert Kane arrested all of the defendants. Significantly, during 1989, Officer Kane made 84% of the drunk-driving arrests in Oaklyn's seven-officer police department. Falcone was arrested in September 1989; Cunningham was arrested in February 1990; and Gookins was arrested in July 1990. On each occasion, Kane was the only officer involved in the arrest and administration of the breathalyzer test. Defendants protested their innocence but claimed that their breathalyzer readings in excess of .10 convinced them to plead guilty to the offense. Subsequently, an undercover operation conducted by the Camden County Prosecutor resulted in Kane's conviction for falsifying the result of a breathalyzer test that he performed on an undercover agent and for stealing money from drivers whom he had stopped. Although the charges against Kane did not pertain specifically to these three defendants, defendants contend that Kane's criminal conduct constitutes newly-discovered evidence of fraud relating to the reliability and validity of their breathalyzer results such that the interests of justice require new trials in all three cases. The Oaklyn Municipal Court denied defendants' motions for new trials. The Law Division upheld the convictions, as did a two-judge majority in the Appellate Division. Because of the dissent in the Appellate Division, these appeals came to us as of right. *R.* 2:2–1(a)(2).

## II

The courts below focused on the evidentiary issue concerning whether Officer Kane's falsification of a breathalyzer result was newly-discovered evidence admissible as "other crimes" evidence under *Evidence Rule* 404(b) to impeach Kane's testimony.

*Evidence Rule* 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

Generally, courts apply that rule to evidence of "other crimes, wrongs, or acts" of the defendant in a criminal case. *See, e.g.,* *State v. Stevens,* 115 *N.J.* 289, 558 *A.*2d 833 (1989) (admitting evidence, in prosecution for official misconduct, that police officer had used office to intimidate women into disrobing or providing sexual favors to prove that officer had conducted searches to gratify sexual desires). However, in this case, we are applying the rule to evidence of "other crimes, wrongs, or acts" of a prosecution witness. Defendants claim that the evidence of Officer Kane's misconduct constitutes newly-discovered evidence necessitating vacation of their convictions because that evidence (1) is material to the issue of whether they were guilty of driving under the influence of alcohol, (2) was neither discoverable nor discovered at the time of their guilty pleas, and (3) would probably change their judgments of conviction. *State v. Carter,* 91 *N.J.* 86, 449 *A.*2d 1280 (1982); *R.* 4:50–1(b).

The Appellate Division held that "other crimes" evidence is admissible only where there is " 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' " 263 *N.J.Super.* 58, 63, 621 *A.*2d 968 (1993) (quoting 2 Wigmore, *Evidence* § 304, at 202 (3d Ed.1940)). Applying that principle to the facts of these cases, the court did not find sufficient similarity between these cases and the ones in which Kane was convicted of misconduct because (1) Kane's convictions do not establish falsification in any of these defendants' cases, and (2) these cases do not involve allegations of theft by Kane. *Id.* at 62, 621 *A.*2d 968. We believe the legal standard for admissibility to be less stringent.

In *State v. Garfole,* 76 *N.J.* 445, 388 *A.*2d 587 (1978), a rape suspect sought to develop, on cross-examination of a police wit-

ness, the facts of four other episodes originally charged to him in an effort, first, to establish that a single person was responsible for all of the incidents, and, second, to prove that he was not that person because he had an alibi for all but two of the occasions. Both the trial court and the Appellate Division refused to allow defense counsel to elicit the testimony on the basis that it was not relevant because the incidents were not sufficiently similar to establish a pattern. Our Court remanded the case for a relevancy hearing to be conducted under the following standard:

> [A] lower standard of degree of similarity of offenses may justly be required of a defendant using other-crimes evidence defensively than is exacted from the State when such evidence is used incriminatorily. * * * [O]ther-crimes evidence submitted by the prosecution has the distinct capacity of prejudicing the accused. Even instructions by the trial judge may not satisfactorily insulate the defendant from the hazard of the jury using such evidence improperly to find him guilty of the offense charged merely because they believe he has committed a similar offense before. Therefore a fairly rigid standard of similarity may be required of the State if its effort is to establish the existence of a common offender by the mere similarity of the offenses. But when the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.
>
> [*Id.* at 452–53, 388 *A.*2d 587 (citation and footnote omitted).]

Thus, under *Garfole*, a criminal defendant offering "other crimes" evidence to establish innocence need not meet as high a similarity-based standard of relevancy as the State when it seeks to admit "other crimes" evidence to prove a defendant's guilt.

By analogous reasoning, the Appellate Division, in *State v. Dickerson*, 268 *N.J.Super.* 33, 632 *A.*2d 843 (1993), overturned the guilty plea and judgment of conviction of another defendant whom Officer Kane had arrested for drunk driving. The *Dickerson* court did not disapprove of the *Gookins* court's opinion but distinguished Dickerson's case from the cases of Gookins, Falcone, and Cunningham on the basis that Dickerson claimed Kane had stolen money from her during the arrest. *Id.* at 37, 632 *A.*2d 843. We do not consider allegations of theft by Kane an indispensable element of similarity. The fact that Kane falsified a breathalyzer

result in another drunk-driving case provides sufficient similarity to justify setting aside defendants' judgments of conviction.

At new trials, defendants could use Kane's conviction to establish that Kane had the opportunity to falsify defendants' breathalyzer readings and to prove the absence of mistake or accident with regard to any incorrect readings (*i.e.,* to prove a pattern of *intentional* falsification). Furthermore, defendants could bolster their allegations of a pattern of misconduct by proving with clear and convincing evidence that Kane falsified breathalyzer results in cases other than the one in which he pleaded guilty to misconduct. Thus, the *Garfole* standard requires new trials for these three defendants so that they may offer evidence of Officer Kane's misconduct in their defense.

### III

However, our decision does not hinge solely on *Evidence Rule* 404(b) as applied under *Garfole, supra,* 76 *N.J.* 445, 388 *A.*2d 587. A more fundamental premise requires vacation of these pleas. Because public confidence in the criminal-justice system depends on the integrity of the courts, the prosecutors, and the police, the system can never disregard misconduct by such actors in the fulfillment of their public duties. In *Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963), the Court explained that corrective justice in such circumstances does not constitute "punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Id.* at 87, 83 *S.Ct.* at 1197, 10 *L.Ed.*2d at 218.

Prosecutors are ethically bound to do justice:

"The * * * [prosecuting] Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."

[*State v. Rose*, 112 *N.J.* 454, 509, 548 *A.*2d 1058 (1988) (quoting *Berger v. United States*, 295 *U.S.* 78, 88, 55 *S.Ct.* 629, 633, 79 *L.Ed.* 1314, 1321 (1935)).]

Thus, a prosecutor cannot strike a foul blow against a defendant by offering tainted evidence. Courts are similarly obliged. "[C]ourts may not abide illegality committed by the guardians of the law." *State v. Molnar*, 81 *N.J.* 475, 484, 410 *A.*2d 37 (1980). To do otherwise "would erode public confidence in the impartiality and fairness of the judicial process." *Id.* at 485, 410 *A.*2d 37. A guiding principle in these appeals is that the judiciary is obliged to "'preserve public confidence' in the administration of justice." *State v. Dunne*, 124 *N.J.* 303, 315, 590 *A.*2d 1144 (1991) (quoting *In re Edward S.*, 118 *N.J.* 118, 148, 570 *A.*2d 917 (1990)).

In similar circumstances, the West Virginia Supreme Court confronted evidence of tampering in the West Virginia State Police Crime Laboratory. *In re an Investigation of the W. Va. State Police Crime Lab., Serology Div.*, 438 *S.E.*2d 501 (1993). The court appointed a special master to conduct an investigation into the extent of evidence tampering. *Id.* at 502. On receipt of the master's report, the court ordered that guilty pleas entered in the face of such evidence should be vacated if the State's intent to use the tainted evidence was communicated to an accused prior to the guilty plea and if all the circumstances surrounding the evidence of the defendant's involvement in the crime warrant a conclusion that manifest injustice would occur if the guilty plea were not set aside. *Id.* at 507. In cases in which the evidence had been presented at trial, the inquiry would be whether other evidence in the case would have been sufficient to support the verdict. *Id.* at 506. The principles of decision set forth in that court's opinion are concise and bear repeating.

> Newly discovered evidence is not the only ground on which habeas relief can be afforded. It has long been recognized by the United States Supreme Court that it is a violation of due process for the State to convict a defendant based on false evidence. Chief Justice Warren, writing for a unanimous Court in *Napue v. Illinois*, 360 *U.S.* 264, 269, 79 *S.Ct.* 1173, 1177, 3 *L.Ed.*2d 1217, 1221 (1959), summarized this principle:
>
> > *First*, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. . . . The same result obtains when the State, although not solicit-

ing false evidence, allows it to go uncorrected when it appears. [Emphasis in original; citations omitted.]

In *Giglio v. United States*, 405 *U.S.* 150, 92 *S.Ct.* 763, 31 *L.Ed.*2d 104 (1972), a unanimous Court again concluded that the Government was responsible for false testimony on the part of one of its witnesses even though the prosecutor was unaware of its falsity.

     \*     \*     \*     \*     \*     \*     \*     \*

The matters brought before this Court \* \* \* are shocking and represent egregious violations of the right of a defendant to a fair trial. They stain our judicial system and mock the ideal of justice under law.

[*Id.* at 504, 507.]

Applying those principles, the West Virginia court ruled that whether a prosecutor or law-enforcement agent using the rogue trooper as an expert ever knew that the officer was falsifying the State's evidence did not matter. "The State must bear the responsibility for the false evidence. The law forbids the State from obtaining a conviction based on false evidence." *Id.* at 505. The court found that the "pattern and practice of misconduct [by the officer] completely undermined the validity and reliability of any forensic work he performed or reported [during his tenure in the serology department of the state police crime laboratory]." *Id.* at 504. The court adopted the special master's conclusion that " 'as a matter of law, any testimonial or documentary evidence offered by [the trooper] at any time in any criminal prosecution should be deemed invalid, unreliable, and inadmissible \* \* \*.' " *Id.* at 506.

The misconduct in this case does not present the same degree of systemic pervasiveness as the misconduct in the West Virginia case. However, the record contains evidence of widespread misconduct on the part of Officer Kane. In addition to Kane's guilty plea in related criminal cases, the State has entered a stipulation in a class-action suit brought in the United States District Court for the District of New Jersey in which it has consented to the appointment of an advisory master who will review drunk-driving cases involving Officer Kane to determine whether the convictions

should be reversed. (That response seems appropriate. For example, the New York State Police recently reexamined all of the cases of evidence tampering investigated by a trooper who has himself been charged with such tampering. *State Police Investigator Is Held in False Evidence, N.Y. Times,* Dec. 2, 1993, at B6.)

Furthermore, the State informed us at oral argument that it has not prosecuted and will not prosecute any cases in which the defendant alleges that Kane had stolen money during the arrest. However, we have held that defendants in the three cases before us need not allege theft by Officer Kane to establish the relevance of Kane's misconduct to their drunk-driving cases. (Defendant Linda Falcone has moved to supplement the record in this case with evidence of her allegation that Officer Kane had stolen money from her. In light of our disposition of her appeal, we need not supplement the record.)

We are not ordering the dismissal of all cases in which Kane was involved. We are, however, requiring the State to prove defendants' guilt with evidence that is free of the taint of Officer Kane's pattern of misconduct.

To restate the words of *State v. Sugar,* 84 *N.J.* 1, 417 *A.*2d 474 (1980), "The official conduct which is the predicate of this appeal profoundly shocks the judicial conscience. It was a brazenly lawless attempt to seek a conviction at the expense of fundamental individual rights." *Id.* at 26, 417 *A.*2d 474. In *Sugar,* when we determined that the State had engaged in misconduct in order to seek a conviction at the expense of individual rights, the State bore the burden of establishing that all the evidence it proposed to use at trial should be free of taint. *Id.* at 27, 417 *A.*2d 474.

That procedure seems equally applicable here. Each of these matters shall be remanded to the municipal court. The prosecution shall certify to the municipal court all the evidence that it considers to be untainted that would sustain the prosecution of these cases, thus excluding the testimony of Officer Kane. For

example, the State may show whether other witnesses were present at the scene of the arrest who observed the conduct of the accused or whether exclusion of the breathalyzer results is not required because other officers' participation in the breathalyzer testing assures the test's reliability. The municipal court shall then set a date for a hearing to determine whether such evidence is sufficient to permit the State to proceed with the case, and thereafter conduct further proceedings as necessary and appropriate. Defendants will have the continuing right throughout such prosecution to challenge the legality of the State's presentation.

### IV

The judgment of the Appellate Division is reversed. Defendants' judgments of conviction are vacated and defendants' cases are remanded to the Oaklyn Municipal Court for further proceedings in accordance with this opinion.

For reversal and remandment—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.