**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2188-24

MAR ACQUISITION GROUP,
LLC, TAG DEVELOPMENT,
LLC,

     Plaintiffs-Respondents,

v.

MAURICE OPARAJI,

     Defendant/Third-Party
     Plaintiff-Appellant,

and

ME & YOU BIOTECH INC.,

     Defendant,

v.

MAR ACQUISITION GROUP, LLC,
TAG DEVELOPMENT, LLC,
WFG NATIONAL TITLE
INSURANCE COMPANY,
A ABSOLUTE ESCROW
SETTLEMENT CO., INC.,
ACRES LAND TITLE
AGENCY, INC.,

PETER A. UZZOLINO,
JONATHAN TEOH,
RAPHAEL SALERMO,

      Third-Party Defendants-
      Respondents,

and

VALLEY SURVEYING, PLLC,
EXIT REALTY
LUCKY ASSOCIATES,

      Third-Party Defendants.

_____

Submitted January 14, 2026 – Decided March 10, 2026

Before Judges Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000120-21.

Maurice Oparaji, self-represented appellant.

Bendit Weinstock, PA, attorneys for respondents Mar Acquisition Group, LLC, Tag Development, LLC, Jonathan Teoh, and Raphael Salermo (Joseph H. Tringali, on the brief).

Louis A. Chiafullo, attorney for respondents Acres Land Title Agency, Inc., A Absolute Escrow Settlement Co., Inc., and Peter Uzzolino, join in the brief of respondents Mar Acquisition Group, LLC, Tag Development, LLC, Jonathan Teoh and Raphael Salermo.

A-2188-24

Riker Danzig LLP, attorneys for respondent WFG National Title Insurance Company (Jorge A. Sanchez, on the brief).

PER CURIAM

Appellant Maurice Oparaji challenges a March 14, 2025 order denying his application to vacate two prior Law Division orders, which ordered specific performance of two contracts of sale of two of his properties. We conclude the trial court appropriately exercised its discretion in denying Oparaji's motion. Therefore, we affirm.

I.

This case arises from the attempted sale of two contiguous real estate lots, known respectively as 71 Isabella Avenue ("Lot 51") and 73 Isabella Avenue ("Lot 50") in Newark. On February 8, 2021, Oparaji, the owner of both parcels, contracted to sell Lot 51 to Mar Acquisition Group, LLC ("MAR") and Lot 50 to Tag Development, LLC ("TAG") at a purchase price of $120,000 each. Both respondents intended to develop the property into veterans' housing. Although neither contract contained a fixed expiration date nor did either include a clause making "time of the essence," anticipated closing dates were set for February 28, 2021, for Lot 51, and April 28, 2021, for Lot 50.

3

A-2188-24

MAR and TAG investigated certain environmental concerns at the premises and negotiated a cost-split for oil tank removals. Both buyers retained architects and obtained title insurance, property surveys, and construction loans as well. Notwithstanding the contracts, Oparaji transferred ownership of the properties, along with another adjacent Lot 49, to Me & You Biotech Inc.[1] ("Biotech") on April 14, 2021. Those transfers were made by deed and for nominal consideration. Respondents speculated the transfers represented an attempt by Oparaji to avoid a docketed judgment. Although Oparaji disputed this and claimed the allegations were defamatory, Oparaji did not provide a substantive alternative explanation for the transfers.

Despite the ownership change, Oparaji's counsel continued to interact with MAR and TAG's attorneys regarding closing, scheduling, and title issues, including an unresolved judgment against Oparaji revealed in the title search.[2] They discussed arrangements for escrow of funds to satisfy the judgment. In a June 14, 2021, email, Oparaji confirmed a closing date for June 22, 2021.

---

[1] Biotech is a New Jersey corporation formed in January 2021. Biotech's formation documents disclosed that incorporators were Oparaji, Prince Oparaji, and Aaron Bowen, and that same were the initial directors. Prince Oparaji was identified as Biotech's Registered Agent.

[2] The judgment totaled $38,061.33 and was entered under Oparaji v. Innovate 1 Services, Inc., Docket No. ESX-L-6600-17.

However, on June 21, 2021, Oparaji's counsel informed MAR and TAG's attorneys that:

> Seller will not be ready to close tomorrow and the said judgments are the subject of appellate hearing pending before the Appellate court of [New Jersey].
>
> Further, I have discontinued my representation of the [s]eller in the above captioned transaction and wish to return your earnest money deposits to your office.
>
> Please provide us with your Attorney Trust Account information so I can return the sum of $20,000 initial deposits from the [b]uyers of 71 and 73 Isabella Avenue.

Several days later, Oparaji's counsel took the position that:

> Seller and [b]uyer should be able to resolve setting aside a particular amount of money in the escrow and proceed to closing the transaction. When the [s]eller settles his appellate litigation and clears the title encumbrance (judgment lien), then the fund in escrow shall be released to him. The escrow may be held by the [b]uyer's attorney, [s]eller's attorney or title company as agreed to by the parties.

Oparaji's transactional attorney confirmed counsel's "capacity as . . . [Oparaji's] attorney," acknowledged that MAR and TAG as buyers had removed the oil tank, and confirmed that the deposit monies were still in his possession:

> I do not know where Mr. Oparaji got the impression that the deposit money was returned to the [b]uyer's

attorney. How could the [s]eller's attorney return the deposit money after the [b]uyer solely bore the entire cost of removing the oil tank from 71/73 Isabella Ave. In my capacity as the [s]eller's attorney, I confirm that I still have the deposit sum of $20,000 in my Attorney Trust account, which I will transfer at closing to the [b]uyer's closing title agent's designated account. As I have earlier stated, the seller needs to agree to have a certain amount of money to be held in escrow for his benefit until he resolves his appellate matter in his favor. Then he gets the escrowed funds released to him. However, if he loses the appeal then he doesn't get the escrowed fund.

TAG and MAR sued Oparaji for specific performance of their contracts. Oparaji attempted to remove the matter to federal court. However, that court remanded the matter sua sponte concluding it lacked subject matter jurisdiction. Oparaji appealed. The Third Circuit dismissed the appeal and remanded to the Superior Court.

Following the buyers' summary judgment application, the motion judge entered an order on March 8, 2022, ordering the specific performance of the contracts. After Oparaji failed to appear for closing, the motion judge signed a December 8, 2022 order in aid of MAR and TAG's litigants' rights and appointed an agent to close the transaction. Oparaji again failed to appear on the closing date. As a result, the agent transferred Lot 50 to TAG and Lot 51

to MAR and deposited those funds into the Superior Court Trust Fund Unit on October 2, 2024.

Oparaji appealed and we affirmed. MAR Acquisition Grp., LLC, and TAG Dev., LLC v. Oparaji, No. A-2160-21 (App. Div. Apr. 21, 2023) (Oparaji I). A subsequent federal action was also dismissed.

In February 2025, Oparaji moved to vacate the December 8 2022, and October 2, 2024 orders under Rule 4:50-1 (b), (c), (d), (f), and Rule 4:6-2(a), alleging fraud and lack of jurisdiction, among other grounds. MAR and TAG opposed the application arguing the motion was untimely and lacked merit.

In a written decision, a second motion judge denied the application holding: (1) the deadlines under Rule 4:50-1(a)-(c) had passed; (2) Oparaji failed to establish fraud, mistake, excusable neglect, or that newly discovered evidence existed; (3) the trial court had jurisdiction, as evidenced by the Appellate Division's affirmance of a separate order in this matter; and (4) there were no exceptional circumstances justifying relief under Rule 4:50-1(f).

Oparaji appeals and raises these issues for our consideration:

> Point I.
>
> The Superior Court denied [Oparaji's] motion to vacate without considering the ramifications of the court's lack of jurisdiction. "Where there is no jurisdiction, the judgment is absolutely void and of no

7

legal effect for any purpose. Garza v. Paone, 44 N.J. Super. 553, 557 (App. Div. 1957); see also Berger v. Paterson Veterans Taxi Serv., 244 N.J. Super. 200, 204 (App. Div. 1990), and may be collaterally attached for that reason under Rule 4:50-1(d) (authorizing relief from judgment where it is void)".

Point II.

Whether [p]laintiffs-[r]espondents was a bona fide encumbrancer entitled to protection under New Jersey Statutes Title 46 on November 20, 2020[,] when they signed a resolution and transferred appellant's properties known as 71 and 73 Isabella Avenue.

II.

When reviewing a motion brought under Rule 4:50-1 to vacate a final judgment, we defer to the trial court and consider whether it misapplied its discretion when it granted that relief. See 257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 339, 366 (App. Div. 2023) (citing U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)). Such a determination "should not be reversed unless it results in a clear abuse of [that] discretion." Guillaume, 209 N.J. at 467.

Parties may move to vacate a final judgment or order for several reasons, including:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due

8

diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

[R. 4:50-1.]

Rule 4:50-1 is "'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (quoting Baumann v. Marinaro, 95 N.J. 380, 392 (1984)). However, vacating a judgment under Rule 4:50-1 "should be granted sparingly." Fineberg v. Fineberg, 309 N.J. Super. 205, 215 (App. Div. 1998) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283-84 (1994)).

In this matter, Oparaji argues the second motion judge erred in denying his motion to vacate the judgment under Rule 4:50-1(b), (c), (d), and (f). He asserts, specifically: (1) that newly discovered evidence and alleged fraud warrant relief under subsections (b) and (c); (2) the trial court lacked subject-

9

matter jurisdiction under subsection (d) because the properties at issue were purportedly stolen; and (3) that extraordinary circumstances justify relief under subsection (f). We disagree, and conclude the trial court's denial of relief was grounded in both the facts and applicable law.

A.

First, Oparaji's claims under Rule 4:50-1(b) and (c) are time-barred because he filed his motion well beyond the one-year time limitation and failed to show that the new evidence or alleged fraud would have altered the outcome.

Under Rule 4:50-2, a motion to vacate "shall be made within a reasonable time" and must specifically be made within one year after judgment for motions made under Rule 4:50-1(a), (b), and (c). "This expressly means that motions under subsections . . . (b) and (c) must be filed within . . . 'one year after the judgement'" while subsections (d) and (f) must be brought within a reasonable time. Romero v. Gold Star Distribution, LLC, 468 N.J. Super. 274, 296 (App. Div. 2021) (quoting Orner v. Liu, 419 N.J. Super. 431, 437 (App. Div. 2011)). Moreover, Rule 1:3-4 bars any expansion of the time limitations in Rule 4:50-2.

10

Here, the trial court granted summary judgment and ordered specific performance on December 8, 2022. Oparaji did not file his motion until April 1, 2025, well beyond the one-year time limitation. Therefore, the application is temporally infirm.

The merits of the claim are substantively problematic as well. Oparaji only asserts, without any particulars that he has newly discovered evidence. Without any specific information, he cannot demonstrate that the evidence would change the ultimate outcome. The allegations of fraud are similarly hypothetical and do not "allege with specificity the representation, its falsity, materiality, the speaker's knowledge or ignorance, and reliance." Palko v. Palko, 73 N.J. 395, 401 (1977) (Schreiber, J., dissenting); see also State v. Hill, 267 N.J. Super. 223, 226 (App. Div. 1993), rev'd on other grounds, 136 N.J. 292 (1994).

### B.

Oparaji next claims that because the properties were transferred to MAR and TAG impermissibly by fraud or theft, the trial court did not possess jurisdiction to order specific performance. This argument similarly lacks merit.

A-2188-24

Opariji has not established there was fraud or theft in the transaction regarding the property, which would render the sale and the subsequent order for specific performance void.

Here, MAR and TAG brought their action in the Chancery Division, and set forth contract and equitable claims, including a demand for the specific performance of contracts for the sale of two lots. These claims fall squarely within the equitable powers of the Chancery Division. Accordingly, the court was legally authorized to reach the issues presented and to grant equitable relief.

C.

Finally, Opariji has not demonstrated the exceptional circumstances nor grave injustice necessary to obtain relief under Rule 4:50-1(f). See Little, 135 N.J. at 286 (quoting Baumann, 95 N.J. at 395). The rule should only be applied "to 'situations in which, were it not applied, a grave injustice would occur.'" Guillaume, 209 N.J. at 484 (quoting Little, 135 N.J. at 289). "The nature of the exceptional relief afforded by Rule 4:50-1(f) requires courts to focus on equitable considerations in determining whether the specific circumstances warrant the unique remedy authorized by the Rule." Little, 135 N.J. at 294.

A-2188-24

Here, Oparaji contends that the case should be reopened under Rule 4:50-1(f), asserting that he did not discover the alleged fraud until April 2024. However, as stated, his claims of fraud are speculative and are unsupported by any credible evidence. Even if such claims were meritorious, Oparaji failed to act diligently upon their discovery, instead waiting an unreasonable period before seeking relief. We conclude the lack of prompt action undermines the assertion of exceptional circumstances required under Rule 4:50-1(f).

The remainder of Oparaji's arguments not addressed here lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13

A-2188-24